The **JOSLIN DRY GOODS CO.,** Plaintiff,

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** Defendant.

**Civ. A. No. C–3187.**

United States District Court,
D. Colorado.

Dec. 8, 1971.

Spencer, Fane, Britt & Browne, by
Jack L. Whitacre, Kansas City, Mo.,
Holland & Hart, by Bruce W. Sattler,
Denver, Colo., for plaintiff.

Ellis Bert, Equal Employment Opportunity Commission, Albuquerque, N. M., for defendant.

## MEMORANDUM OPINION

WINNER, District Judge.

This case arises under 42 U.S.C. § 2000e-9, which switches that which would be a routine discovery matter in an ordinary lawsuit into a full blown trial, the determination of which presumably must rest upon findings of fact and conclusions of law as required by Rule 52. This opinion contains those required findings and conclusions.

42 U.S.C. § 2000e-9 provides in material part:

"(a) For the purposes of any investigation of a charge filed under the authority contained in section 2000e-5 of this title, the Commission shall have authority to examine witnesses under oath and to require the production of documentary evidence relevant or material to the charge under investigation.

"(b) If the respondent named in a charge filed under section 2000e-5 of this title fails or refuses to comply with a demand of the Commission for permission to examine or to copy evidence in conformity with the provisions of section 2000e-8(a) of this title . . . or if any person fails or refuses to comply with a demand by the Commission to give testimony under oath, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, have jurisdiction to issue to such person an order requiring him to comply with the provisions of section 2000e-8(c) or (d) of this title or to comply with the demand of the commission . . .

"(c) Within twenty days after the service upon any person charged under section 2000e-5 of this title of a demand by the Commission for the production of documentary evidence or for permission to examine or to copy evidence in conformity with the provisions of section 2000e-8(a) of this title, such person may file in the district court, of the United States for the judicial district in which he resides, is found, or transacts business, and serve upon the Commission a petition for an order of such court modifying or setting aside such demand . . . ."

The genesis of this case is a complaint filed with the Colorado Civil Rights Commission on December 21, 1970, by one Elnora Thompson against plaintiff here. 42 U.S.C. 2000e-5(b) requires the filing of the charge with the state agency having jurisdiction of such complaints before any charge can be filed with the EEOC. The very next day, to meet the requirements of that section, the Colorado Civil Rights Commission terminated its proceedings in Elnora Thompson's case, and advised the EEOC:

"The Federal Equal Employment Opportunity Commission may now proceed immediately with the case, and it will not be necessary as far as the State of Colorado is concerned for the federal agency to wait the 60 day period mentioned in Section 706(b) of Title VII." [42 U.S.C. § 2000e-5 (b)].

The charge in question was:

"The Respondents discriminated against me on November 16, 1970, by discharging me from my job, such action being based in whole or in part on my race or color, Negro/Black. The Respondent also fails and refuses to hire Negroes and persons of Mexican Ancestry."

The letter from the Colorado Civil Rights Commission and a copy of complainant's charge was received by the EEOC on December 28, 1970, and on December 30, 1970, the EEOC notified Mrs. Thompson of the action of the Colorado Civil Rights Commission and of her right to ask the EEOC to assume jurisdiction. On January 6, 1971, Mrs. Thompson asked that the EEOC assume

jurisdiction, and it did. An investigation was commenced by the EEOC on March 30, 1971. In the course of that investigation, one Trujillo, an EEOC investigator, discussed Mrs. Thompson's charge with a vice-president of Joslins. In this discussion, her personnel file, including certain "shopping reports" prepared by Fitzsimmons and Winters, was discussed and reviewed. The demand was served at the conclusion of this conference, and in response thereto the following data was mailed to the investigator:

1. The then current EEO-1 report which shows a numerical breakdown of employees at Joslins downtown store according to job position, race, ethnic background and sex.

2. An additional summary breakdown by department of all employees in the downtown store according to race and ethnic background.

3. A breakdown of managers according to race and ethnic background.

This information fell far short of meeting the broad scope of the investigator's demand which ordered:

"You are hereby directed to grant Pat A. Trujillo . . . access to, at the Joslins Stores at Denver, Colorado, or other facilities where information and witnesses may be available within 20 days after service of this demand, the following information in your possession and control for the purpose of examining and copying, to-wit:

"1. A roster of all employees presently employed in the following locations:

"Downtown store, Denver

Aurora Store

J.C.R.S.-Lakewood

Greeley

Boulder

Villa Italia

"Such roster to include:

a. Name of employees.

b. Date of hire.

c. Position and/or department of employees.

d. Racial/ethnic group of each employee.

e. Starting and current salary.

"2. A list of all employees terminated since January 1, 1970, to the present, from the Downtown, Aurora, Englewood, J.C.R.S.-Lakewood, Greeley, Boulder and Villa Italia Stores, inclusive of:

"a. Name of employees.

b. Date of hire.

c. Position and/or employees' department.

d. Racial/ethnic group of each employee.

e. Date of termination.

f. Reason for termination.

[sic]

"3. A roster of the managerial staff for the Downtown, Aurora, Englewood, J.C.R.S.-Lakewood, Greeley, Boulder, and Villa Italia Stores inclusive of:

"a. Name of employees.

b. Date of hire.

c. Racial/ethnic group of each employee.

d. Position held.

[sic]

"4. 'Fitzsimmons and Winters' reports on the Downtown, Aurora, Englewood, J.C.R.S.-Lakewood, Greeley, Boulder, and Villa Italia stores since January 1, 1970, to the present. Such reports to include findings based on the checks and/or investigations and/or 'shoppings' made during the aforementioned period. The reports are to include:

"a. Name of individual(s) checked or investigated.

b. Date of hire of individual(s) checked or investigated.

c. Position held by such individual(s).

d. Racial/ethnic group of such individual(s).

e. The report to include the number and name of employees that have been discharged as a result of the checks, investigations and 'shoppings' made since January 1, 1970, by 'Fitzsimmons and Winters.'

"5. Any like or related records retained in a different form from the documents heretofore enumerated, but reflective of the substance of the evidence in the DEMAND."

The uncontroverted affidavit of Joslins' vice-president shows that the seven stores maintain separate records and that there is no master file of employees. It further shows that although Joslins maintains every record and makes every report required by the EEOC, it does not maintain:

(a) A schedule of employees showing starting salaries.

(b) A list of employees terminated since January 1, 1970. [A separate personnel file is kept for each employee, and such a list would have to be compiled from a review of all files.]

(c) "Fitzsimmons and Winters" reports including the information described in the fourth demand.

To supply the information demanded would require a review of every personnel file maintained by the company, and this would require a study of more than 1,000 personnel files. The company has already furnished the investigator with the job position, race and sex of the only other employee terminated during the past year because of adverse information contained in the Fitzsimmons and Winters reports.

To compile the information requested by Demand No. 2 would require compilation of information from more than 3,000 index cards, and Demand No. 4 would require compilation of information from more than 1,500 files. It seems apparent that the information demanded could not be compiled without the expenditure of a substantial amount of money by Joslins.

With these facts in mind, we pass to a consideration of the statute itself and of the decisions under it, bearing in mind that what the Commission had before it was a complaint by a single employee that she had been fired. We start from the premise that Title VII of the Civil Rights Act should be liberally construed, and "the Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties." Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission, (1969) 5 Cir., 418 F.2d 355. But we also start from an analysis of the statutory scheme and with a recognition that Congress did not intend to confer upon the Commission's investigators the unfettered right to conduct fishing expeditions dictated by nothing more than the investigator's curiosity.

A quick run-through of the statute is as follows:

Sec. 2000e-2 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual (with respect to his employment) because of such individual's race, color, religion, sex, or national origin." Sec. 2000e-4 creates the Equal Employment Opportunity Commission. It consists of five members appointed by the President with the advice and consent of the Senate, and it is given authority to employ subordinates. In summary form, its powers are these:

1. To cooperate with state and local agencies.

2. To pay witness and mileage fees on deposition.

3. To furnish technical assistance to persons subject to the act.

4. Upon request of an employer or labor organzation, "to assist in . . . . effectuation by conciliation or such other remedial action as is provided by this sub-chapter."

5. To make technical studies.

6. "To refer matters to the Attorney General with recommendations for intervention in a civil action brought by an aggrieved party under section 2000e-5 of this title, or for the institution of a civil action by the Attorney General under section 2000e-6 of this title, and to advise, consult, and assist the Attorney General on such matters."

Sec. 2000e-5 contains the enforcement provisions. Subparagraph (a) sets forth two alternative methods of making charges. An aggrieved person may make a charge under oath, or a member of the Commission having "reasonable cause to believe a violation of" the act has occurred may make a charge, where "such charge sets forth the facts upon which it is based."[1] A copy of the charge must be furnished to the employer, and the Commission is required to investigate the charge, "provided that such charge shall not be made public by the Commission." If the Commission thinks that there is reasonable cause to think that the charge is true, the Commission is commanded to attempt to work the matter out by conciliation and persuasion. Conversations during the conciliation negotiations may not be made public, nor may anything said or done be received in evidence in a later proceeding.

Subparagraph (b) is the one which gives priority to any state agency having jurisdiction, and which says that charges cannot be filed with the EEOC until 60 days after the charge is filed with the state agency or until its proceedings have been terminated. Subparagraph (d) requires that the charge be filed within 90 days of the alleged unlawful employment practice, or, if a charge has been filed with a state agency, within 210 days of the alleged unlawful practice. Subparagraph (e) says that if compliance cannot be obtained voluntarily, the Commission shall notify the person aggrieved, and he then has 30 days within which to bring a civil action. If the charge was filed by a Commission member, any person said to be aggrieved may bring the lawsuit. The Attorney General has a permissive right to intervene upon his certification that the case is one of general public importance. Subparagraphs (f) and (g) grant jurisdiction to United States District Courts, and outline the remedies which are available. These include injunctive relief, hiring, and reinstatement (with or without back pay).

Sec. 2000e-6 authorizes actions by the Attorney General whenever he thinks that someone "is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter." Provision is made for a three-judge court upon request of the Attorney General, and, absent such request, it is required that the case be expedited by the single judge to whom it is assigned.

Sec. 2000e-8 is the important one here. It provides:

"(a) In connection with any investigation of a charge filed under section 2000e-5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and *the right to copy* any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter *and* is relevant to the charge under investigation.

. . . . . .

"(e) It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institu-

---

1. Manifestly, this qualifying clause prohibits the Commission from entering upon a frolic of its own unless the charging Commissioner has facts on which to base his charge. See: United Nuclear-Home-stake Partners v. E.E.O.C., decided November 29, 1971, 10 Cir., No. 668-70, where it was held that Commissioner initiated charges must set forth facts.

tion of any proceeding under this sub-chapter involving such information." [emphasis supplied]

We have already quoted Sec. 2000e-9 which gives the Commission authority to examine witnesses under oath "and to require the production of documentary evidence relevant or material to the charge under investigation." As we have noted earlier, it was under Sec. 2000e-9(c) that this action was commenced.

■ It is endemic to investigators to use the foot-in-the-door approach to try to expand their jurisdiction and to claim the right to investigate anything they think interesting which may remotely concern any matter about which they are inquiring. In passing upon this case, it must be remembered that Congress required that a Commission member himself must have reasonable cause and must set forth facts upon which he founds a charge. It is difficult for us to think that Congress intended to confer on every investigator the right to broaden willy nilly the investigation of a simple charge by one employee discharged from one store into a sweeping investigation of everything an employer may have done in seven different locations at which seven separate sets of records are maintained. If a Commissioner appointed by the President by and with the advice and consent of the Senate must have facts on which to make a charge, we doubt that Congress intended to give every overly eager subordinate investigator the right to go far afield from the charge made and to lunge into an all encompassing investigation of vaguely related matters of passing personal interest to the subordinate. To so hold would be to say that Congress gave to investigators powers it carefully withheld from Commission members. Such a holding would defy logic and reason.[2]

■ However, totally apart from our belief as to Congressional intent, there is no way that the statute can be read to require an employer to compile information. Sec. 2000e-8 gives the right to copy, and Sec. 2000e-9 requires the production of documentary evidence. No statute requires the employer to compile anything, and the courts have so held. Georgia Power v. E. E. O. C. (1968) (D.C.Ga.) 295 F.Supp. 950; Georgia Power v. E. E. O. C. (1969) 5 Cir., 412 F.2d 462. And this is the conclusion reached by cases passing on the meaning of Rule 34. 4 Moore's Federal Practice ¶ 34.05[1]; Toorchen v. Olin Industries, Inc., (1946) (D.C.N.Y.) 6 F.R.D. 20; United States v. United States Alkali Export Ass'n. (1946) (D.C. N.Y.) 7 F.R.D. 256; Berg v. Hoppe, (1965) 9 Cir., 352 F.2d 776.

This ruling by itself disposes of most of the demand, although it is indeed difficult to tell how much of the demand remains after application of this principle. Probably either this court or the Court of Appeals could winnow the demand and do a fair job of deciding how much information would be available without compilation, but the pragmatic approach to the situation is to let the EEOC investigator thresh the problem and come up with a new demand consistent with the powers granted by Congress. The statute permits an order setting the demand aside, enforcing the demand, or modifying the demand. Plaintiff seeks to have it set aside; defendant seeks to have it enforced. Neither party asks that the demand be modified, and the Court does not undertake modification on its own, absent a request by either party to do so, and faced with the task of sifting from the demand material which does not require compilation.

■ What has been said suffices to dispose of this case, but, looking ahead,

2. It is true that in *United Nuclear Homestake*, supra, note 1, the Tenth Circuit said that Congress did not wish to require complainants to set forth facts, but this is not to say that Congress intended that investigators could operate without restriction, because, surely, Congress did not intend that the investigators should have more power than their bosses, the Commissioners.

additional comments seem appropriate. It is the clear intent of Sec. 2000e-5(a) that when a complaint is filed by a Commissioner based upon reasonable cause and upon a statement of the facts on which that cause rests, an investigation may be made of any violation of any provision of the subchapter. With equal clarity, it is the intent of that section that when the charge is made by an aggrieved person, the investigation should be limited to matters relevant to the grievant's complaint, and surely Congress did not intend that an aggrieved person could trigger an investigation of employment practices not relevant to that person's complaints. Not squarely in point, but illustrative of the proposition that even in an attempted class action under Title VII, the issues are limited to the grievances of the plaintiff is White v. Gates Rubber Company (1971) (D.C.Colo.) 53 F.R.D. 411. Chief Judge Arraj said there:

"When the plaintiffs have a sufficient stake in the challenged practices to make them adequate representatives, then an actual grievance arising from those practices may not be necessary. In this case, however, White has no such stake. He has not asked for reinstatement and he apparently has no intention of returning to work at Gates. Consequently, we 'cannot assume . . . that plaintiff will fairly and adequately represent the interests of other Negroes who were [allegedly] discriminated against in such areas as job assignments, overtime, or vacations.' Burney v. North American Rockwell Corp., (C.D.Cal.1969) 302 F. Supp. 86. Indeed it appears that White, rather than being aggrieved by the employment and promotion practices of Gates, was given unexceptional treatment in both areas. This fact

would have bearing on plaintiff's bringing the claim of discriminatory firing, but it does not make him an adequate representative of the general class he claims to represent."

■ The investigation under attack here has to do with the accusation of Elnora Thompson that she was fired because of her race or color. If, as Chief Judge Arraj has held, she would have no standing in a lawsuit to represent any class other than a class composed of persons who were fired because of their race or color, she cannot provide an avenue for an investigator for the EEOC to initiate a company wide investigation of all of Joslins' employment practices, because this type of investigation Congress has said may be initiated only by a Commission member acting with reasonable cause and upon a full statement of facts. Congress has said that a commissioner must have reasonable cause and must state facts to justify an investigation such as is here demanded. Chief Judge Arraj has said that Mrs. Thompson would have no standing to complain in a class action about anything other than firing practices. Trujillo does not have powers greater than a commission member or broader than the standing of Mrs. Thompson in a class action.

We are not unaware of cases such as Georgia Power Co. v. E. E. O. C. (1968) (D.C.Ga.) 295 F.Supp. 950; Georgia Power Co. v. E. E. O. C. (1969) 5 Cir., 412 F.2d 462; South Central Bell Tel. Co. v. E. E. O. C. (1970) (D.C.La.) 314 F.Supp. 349; Blue Bell Boots v. E. E. O. C. (1969) 6 Cir., 418 F.2d 355; Bowaters Southern Paper Corp. v. E. E. O. C. (1970) 6 Cir., 428 F.2d 799,[3] and H. Kessler & Co. v. E. E. O. C. (1971) C.C.H. Employment Practices Decisions ¶ 7537.

3. The case involved a charge by a Commissioner rather than by an aggrieved person, and, although we agree that "there is no constitutional prohibition to Congress permitting investigations of corporate behavior based upon nothing more than official curiosity," there is a statutory limitation on the right of the E.E.O.C. to investigate, and that limitation was said to be met in *Bowaters* because it was a Commissioner stated check. The prohibition here applicable is not constitutional —it is statutory. Moreover, in *United Nuclear Homestake*, the Tenth Circuit expressly refused to go along with *Bowaters*.

Except for the footnote comments concerning *Bowaters*, we do not differ materially from any of the cited cases. Rather, we think that the facts here are different and that they require a different result. In *Georgia Power*, the Fifth Circuit said:

"In support of its contention that the EEOC's Demand should be limited further, the company argues that the scope of the EEOC's investigatory authority is severely restricted. The basis of this argument is the change, effected by the Mansfield-Dirksen amendments, in the description of the EEOC's investigatory authority. As originally drafted and as passed by the House of Representatives, the act granted the EEOC investigatory powers substantially commensurate with those of the Federal Trade Commission. However, the bill finally enacted into law contained a narrower grant of authority.

(The opinion then quotes 42 U.S.C. § 2000e-9(a).)

"The company appears to be correct that the reason for this legislative change was the fear of some Senators —particularly Senator Dirksen—that the House-passed version would permit 'fishing expeditions' by the EEOC.

"However, our agreement with the company stops here, for we think that the information required by the amended Demand is clearly relevant to the charge under investigation. The company contends that the only relevant data were 'the records and information pertaining to Mrs. Adkins, together with such records and information pertaining to the individual who was hired in preference to Mrs. Adkins.' Certainly this information is relevant, but we cannot agree that it was the only relevant evidence. Discrimination on the basis of race or sex is *class discrimination*. The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals.

"The contention that the EEOC should not have access to data concerning employment positions other than the one applied for by the charging party is without merit. Comparative evaluation of job qualifications is obviously essential to the EEOC's task. To limit the investigation to a single position would in many, if not most, instances severely restrict comparative study of the charged party's hiring practices. Thus we think it clear that information concerning other positions is relevant to the investigation. Moreover, the amendments to the Demand made by the district court narrowed the discovery to a reasonable breadth. The court limited the Demand geographically, temporally, and in scope. The Demand as amended is reasonable and is limited to relevant information."

*Georgia Power* would be of help to defendant if the aggrieved person here were aggrieved because of allegedly discriminatory hiring practices and if plaintiff had not already furnished the EEOC investigator with the name of the only other employee terminated within the past year because of information in a Fitzsimmons and Winters report. Under our facts, *Georgia Power* doesn't help defendant, and neither do the other cases relied upon by it.

It seems reasonable to assume that § 2000e-9 was written with the discovery rules, and, more particularly with Rule 34 in mind. In 1964, Rule 34 required a showing of good cause by the party seeking inspection of documents, albeit this initial showing is no longer required under the amended rule because, as the Advisory Committee noted, the necessity for the showing is eliminated by the contemporaneous amendment of Rule 26(b). There is no pretense of any showing that the investigator had "good cause" here, even though Congress has said that a Commission member must have "reasonable cause" to initiate an investigation. Senator Dirksen objected

to the House version of the bill because that draft would permit fishing expeditions, and the Senate thought this objection was met by the amendments. So do we, and we refuse to permit discovery into the wild blue yonder at the whim of any EEOC investigator, without a scintilla of showing of either the cause or facts required of a Commissioner.

Lastly, Mrs. Thompson was employed at Joslins' downtown store. Based on the record made, there are no central records, and each store maintains its own personnel files. There is no suggestion in the pleadings that the alleged discriminatory discharge is a result of company-wide policy. In fact, Mrs. Thompson doesn't even say that in her charge. All she accuses Joslins of is that Joslins "discriminated against *me* on November 16, 1970, by discharging me from my job." She then complains about Joslins' hiring practices, but she surely had to have been hired if she was fired. Precision in charges is not required, Blue Bell Boots v. E. E. O. C. (1969) 6 Cir., 418 F.2d 355, but when neither the charge, the pleadings nor the proof suggest any company-wide policy of discrimination, it would be unreasonable and beyond the statutory intent to countenance an investigation of the seven stores operated by Joslins when there is not even a hint of any improper discharge other than a claimed discriminatory firing of Mrs. Elnora Thompson.

For these reasons, it is ordered that the demand of the Equal Employment Opportunity Commission dated May 24, 1971, be set aside, and it is ordered that defendant's request for an order enforcing compliance with the demand be, and the same hereby is denied.

This order is without prejudice to whatever rights defendant may have to serve a new demand on plaintiff, consistent with the views expressed in this opinion.