**The JOSLIN DRY GOODS CO.,**
Petitioner-Appellee,

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent-Appellant.**

No. 72–1172.

United States Court of Appeals, Tenth Circuit.

Aug. 15, 1973.

---

Jack L. Whitacre, Kansas City, Mo. (Jack L. Whitacre, Spencer, Fane, Britt & Browne, Kansas City, Mo., Bruce Sattler, Holland & Hart, Denver, Colo., on the brief), for appellee.

Ellis L. Bert, Albuquerque, N. M., (John de J. Pemberton, Jr., Acting Gen. Counsel, Julia P. Cooper, Chief, Washington, D. C., Appellate Section, Ellis L. Bert, Field Atty., Albuquerque, N. M. Charles L. Reischel, Atty., E. E. O. C., Washington, D. C., on the brief), for appellant.

Before LEWIS, Chief Judge, and JONES* and McWILLIAMS, Circuit Judges.

JONES, Circuit Judge:

The Joslin Dry Goods Co., the appellee, operated retail department stores in the Denver, Colorado, area. It operated a Downtown Denver store and one on West Almeda Street in Denver. It had stores in Aurora, Englewood and Lakewood in suburban Denver. Other stores were located in Greeley and Boulder, each of which is some distance from Denver. The Lakewood store was discontinued prior to the initial hearing in this proceeding.

Mrs. Elnora Thompson filed a charge with the Colorado Civil Rights Commission claiming that she had been the subject of a racially motivated discharge as an employee at Joslin's Downtown Denver store. The proceeding terminated and she filed a charge with the appellant, Equal Employment Opportunity Commission, reading as follows:

"The respondents discriminated against me on November 16, 1970, by discharging me from my job, such action being based in whole or in part on my race or color, Negro/Black. The respondent also fails and refuses to hire Negroes and persons of Mexican ancestry."

It was asserted that Mrs. Thompson's discharge was precipitated, at least in part, by an adverse "Shoppers Report"

of Fitzsimmons, Winters & Co. These reports describe customer service and whether the sale of merchandise is properly recorded and cash properly handled.

The EEOC served Mrs. Thompson's charge on Joslin on March 30, 1971. During the ensuing investigation Joslin voluntarily provided the EEOC with the following information: (1) the current EEO–1 report showing a numerical or statistical breakdown of the employees at the Downtown Denver store according to job position, race or ethnic background and sex; (2) an additional summary breakdown by department of all employees in the Downtown Store according to race and ethnic background; (3) a breakdown of managers according to race and ethnic background; (4) the complete personnel file of Mrs. Thompson, including the Fitzsimmons, Winters & Co. reports, and (5) the job position, race, and sex of the only other person terminated during the prior year, in whole or in part, because of adverse information contained in a Fitzsimmons, Winter & Co. shopping report.

The Commission decided that this information was insufficient for an adequate investigation of the charge and, on May 26, 1971, served Joslin with an administrative subpoena, styled a "Demand for access to evidence and compliance to give testimony under oath," pursuant to Sections 709(a) and 710(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e—8(a) and 2000e—9 (a). The subpoena demanded "access to, . . . for the purpose of examining and copying . . .", the following:

1. A roster of all employees presently employed in the following locations:

    Downtown Store, Denver
    Aurora Store
    J. C. R. S.—Lakewood
    Greeley
    Boulder
    Villa Italia

Such roster to include:

a. Name of employees

b. Date of hire

c. Position and/or department of employees

d. Racial/ethnic group of each employee

e. Starting and current salary

2. A list of all employees terminated since January 1, 1970, to the present, from the Downtown, Aurora, Englewood, J. C. R. S.—Lakewood, Greeley, Boulder, and Villa Italia Stores, inclusive of:

a. Name of employees

b. Date of hire

c. Position and/or employees' department

d. Racial/ethnic group of each employee

e. Date of termination

f. Reason for termination

3. A roster of the managerial staff for the Downtown, Aurora, Englewood, J. C. R. S.—Lakewood, Greeley, Boulder, and Villa Italia Stores, inclusive of:

a. Name of employees

b. Date of hire

c. Racial/ethnic group of each employee

d. Position held

4. "Fitzsimmons and Winters reports on the Downtown, Aurora, Englewood, J. C. R. S.—Lakewood, Greeley, Boulder, and Villa Italia Stores since January 1, 1970, to the present. Such reports to include findings based on the checks and/or investigations and/or "shoppings" made during the aforementioned period. The reports are to include:

a. Name of individual(s) checked or investigated

b. Date of hire of individual(s) checked or investigated

c. Position held by such individual(s)

d. Racial/ethnic group of such individual(s)

e. The report to include the number and name of employees that have been discharged as a result of the checks, investigations and "shoppings" made since January 1, 1970, by "Fitzsimmons and Winters."

5. Any like or related records retained in a different form from the documents heretofore enumerated, but reflective of the substance of the evidence in the DEMAND.

As is shown by the Demand, the EEOC requested information as to the operations of Joslin's Downtown Store and also to the operations of the other Joslin stores. Joslin refused to furnish the information as to the other stores. It filed in the district court a "Petition to Set Aside Demands for Production of Documents" as authorized by Section 710 (c) of the Act, 42 U.S.C.A. § 2000e—9 (c). The Commission answered and petitioned for enforcement of its Demand.

The district court rendered an opinion reported as Joslin Dry Goods Co. v. Equal Employment Opportunity Commission, 336 F.Supp. 941. Before it was an affidavit of a vice president of Joslin and it found that the seven Joslin stores maintain separate personnel records and that there is no master file or records of employees. The district court found that ". . . although Joslin maintains every record and makes every report required by the EEOC, it does not maintain:

(a) A schedule of employees showing starting salaries.

(b) A list of employees terminated since January 1, 1970. [A separate personnel file is kept for each employee, and such a list would have to be compiled from a review of all the files.]

(c) 'Fitzsimmons and Winters' reports including the information described in the . . . demand."

The district court determined that to supply the information demanded would

require a review of every personnel file maintained by the company and the compilation of a substantial amount of information, which "could not be compiled without the expenditure of a substantial amount of money by Joslins." The district court decided that:

"[T]here is no way that the statute can be read to require an employer to compile information. Sec. 2000e—8 gives the right to copy, and Sec. 2000e—9 requires the production of documentary evidence. No statute requires the employer to compile anything, and the courts have so held." Georgia Power Co. v. EEOC, 5th Cir. 1969, 412 F.2d 462, 465.

This ruling disposed of most, but not all, of the EEOC's Demand. There was no request for modification of the Demand and the district court declined to winnow it down, choosing instead to set it aside without prejudice to the right of EEOC to serve a new Demand consistent with the court's opinion. The opinion went on to set forth additional limitations upon the scope of any new Demand. It was determined that Mrs. Thompson has no standing to challenge the hiring practices of Joslin. The rationale of this determination is twofold. It was first decided that Mrs. Thompson was not injured by Joslin's hiring practices. Next it was held that the requirement of 42 U.S.C.A. § 2000e—5(a) that an EEOC Commissioner must have "reasonable cause" before initiating an investigation was not met since Mrs. Thompson's charge contained no fact establishing "reasonable cause" for believing she or anyone else had been discriminated against by the company's hiring practices.

In discussing the right of Mrs. Thompson to question Joslin's hiring practices the district court considered and distinguished the opinion in Georgia Power Co. v. EEOC, 5th Cir. 1969, 412 F.2d 462. We do not think the district court intended, as EEOC suggests, to hold that EEOC could obtain no more data on Joslin's firing practices at the Downtown Store than it had been given.

Another limitation imposed by the district court's opinion is that the investigation must be confined to Joslin's Downtown Store, where Mrs. Thompson had been employed, and could not include the other Joslin stores. The basis for this determination was that the Downtown Store maintains its own separate personnel records and there are no central employment records, and that nothing in Mrs. Thompson's charge or the pleadings suggested company-wide hiring and firing policies and practices. Under these circumstances the court held it would be unreasonable and beyond the statutory intent to countenance such a broad investigation.

The district court's opinion, to which reference has been made, is dated December 3, 1971. It was filed on December 8, 1971. It is styled "Memorandum Opinion." The last two paragraphs of the opinion are in these words:

"For these reasons, it is ordered that the demand of the Equal Employment Opportunity Commission dated May 24, 1971, be set aside, and it is ordered that defendant's request for an order enforcing compliance with the demand be, and the same hereby is denied.

"This order is without prejudice to whatever rights defendant may have to serve a new demand on plaintiff, consistent with the views expressed in this opinion."

On December 14, 1971, the district judge signed a "Judgment" which was filed the following day. It reads as follows:

"Pursuant to and in accordance with the Memorandum Opinion filed in this office on December 8, 1971,

"IT IS HEREBY ORDERED that the demand of the Equal Employment Opportunity Commission dated May 24, 1971, be set aside, and that Defendant's request for an order enforc-

ing compliance with the demand be, and the same hereby is denied.

"This order is without prejudice to whatever rights Defendant may have to serve a new demand on Plaintiff, consistent with the views expressed in the Memorandum Opinion."

On January 26, 1972, EEOC filed a notice of appeal in these terms:

"Notice is hereby given that the Equal Employment Opportunity Commission, defendant above named, hereby appeals to the United States Court of Appeals from the Order of the Court, issued in this action on December 3, 1971, insofar as it forbids the Equal Employment Opportunity Commission from serving any new demand on the Joslin Dry Goods Co., concerning the charge of Elnora Thompson, received by the Commission on December 28, 1970, which is not consistent with the views expressed in page 13–18 of the Memorandum Opinion of December 3, 1971."

█ It may be observed that EEOC has appealed from the "Memorandum Opinion" but not from the "Judgment" of the court. The provisions of the order incorporated in the opinion have the same degree of finality as have the provisions of the order. The appeal is not defective because it is taken from the Memorandum Opinion instead of the Judgment.

It will be noted that EEOC does not assert error in the setting aside of its demand. It does not question the district court's holding with respect to the compilation of information. It does challenge the other limitations imposed by the district court which are applicable to any new demand that EEOC may serve on Joslin.

At the outset Joslin urges that "the EEOC's selective appeal is premature." The substance of its contention may best be ascertained from its brief where it is said:

"The judgment of the district court set aside the Commission's demand of May 24, 1971. The Commission did not appeal this order. There is no demand pending in any form at this time. The Commission in its appeal asked this Court to review and revise the views expressed by the district court on the issue of Mrs. Thompson's standing to challenge alleged discriminatory hiring practices and on the issue of whether the information sought was relevant to the charge under investigation. Curiously, this Court is not asked to enforce the demand, rather the EEOC requests this Court engage in a dialogue with the district court."

Joslin says that it brought an action to set aside the EEOC demand and the court set it aside, that EEOC sought to have the demand enforced and this was denied, that EEOC makes no claim before this Court that the demand should be enforced or that it should not have been set aside. With this theorem established to its satisfaction, it urges that the appeal be dismissed. The Joslin position, as we see it, is not that the appeal is premature, or that there is no finality of the judgment, but rather that there is no justiciable controversy before this Court.

█ The judgment of the district court set aside the demand of EEOC without prejudice to the serving of a new demand with a proviso that the new demand could not require Joslin to compile data, that hiring policies and procedures could not be investigated and that the investigation must be limited to the Downtown Denver store. While the notice of appeal might have been cast in different terms, it is sufficient to show that EEOC seeks review of portions of the proviso annexed to the permission to serve a new demand. The judgment is final and notice of appeal presents issues for review by this Court.

█ The record before this Court is adequate to permit an inference that

each of the Joslin stores was a separate employing unit. It was not shown that there were any hiring or firing practices and procedures applicable to all of the stores. This being so, the decision of the district court limiting the demand of EEOC to the Downtown Denver store is affirmed.

■ The district court held that no investigation could be made of the hiring practices of Joslin on the complaint of Mrs. Thompson because she had not been the object of any hiring discrimination. The district court's holding was unduly restrictive. The question, in our view, is more one of relevance than of standing. The factual statement of a wrongful discharge is enough to justify an investigation of employment practices and policies, as to hiring as well as to firing. Although the charge as to hiring practices was less than might have been desired, it was sufficient to initiate the discovery procedures contemplated by the statutes. United States Steel Corp. v. United States, 10th Cir. 1973, 477 F.2d 925 [decided April 19, 1973] and cases therein cited. It is our conclusion that EEOC is entitled to investigate the hiring as well as the firing practices and procedures at the Downtown Denver Joslin store. The holding otherwise of the district court is reversed on this part of the district court's order.

■ Paragraph 5 of the demand of EEOC would have required the production of "any like or related records retained in a different form from the documents heretofore enumerated, but reflective of the substance of the evidence in the demand." This is not expressly attacked on the appeal. However, it is suggested that the language is too broad and too vague to require compliance with any requirement for production.

The judgment of the district court is affirmed in part and reversed in part, and remanded to the district court for such further proceedings as may be required to give effect to that which has been here determined.

Affirmed in part and reversed in part and remanded.