**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, Peti-
tioner–Appellee,**

v.

**CITICORP DINERS CLUB, INC.,
Respondent–Appellant.**

**No. 91–1419.**

United States Court of Appeals,
Tenth Circuit.

Feb. 1, 1993.

---

**1037**

McWILLIAMS, Senior Circuit Judge.

This case involves an administrative subpoena issued by the Equal Employment Opportunity Commission (EEOC).

On September 2, 1988, Ms. Deborah Hinton Brown, a black female employee of Citicorp Diners Club, Inc. (Diners Club) in its office located in Englewood, Colorado, filed a charge with the EEOC wherein she alleged that Diners Club denied her a promotion because of her sex and race. Shortly thereafter, the EEOC commenced an investigation of Ms. Brown's charge. From September 2, 1989, to June 4, 1990, the EEOC conducted on-site interviews and made numerous requests for information concerning Diners Club's promotion policies. Diners Club apparently complied with these requests.

On June 4, 1990, the EEOC requested additional information from Diners Club concerning its promotion policies. After seeking and receiving clarification from the EEOC regarding the request, Diners Club provided only such additional information as it believed was relevant and not unduly burdensome. In this regard, Diners Club declined to give the EEOC information regarding promotions outside Ms. Brown's work group, which information it believed was not relevant to Ms. Brown's charge. Diners Club also declined to provide information regarding its "within promotion" policy,[1] which information it contended did not exist and would require hundreds of hours of work by Diners Club employees to develop and compile.

To compel Diners Club to produce all the information the EEOC sought, on March 26, 1991, the EEOC issued and served on Diners Club an administrative subpoena, which is the genesis of the present controversy. That subpoena is attached hereto as Attachment A. Two requests in the subpoena required production of information relating to Diners Club facilities nationwide. The remaining requests related solely to the Diners Club facility in Englewood, Colorado.

Lamont N. White, Atty., E.E.O.C., Washington, DC (Donald R. Livingston, General Counsel, Gwendolyn Young Reams, Associate General Counsel, and Vincent J. Blackwood, Asst. General Counsel, with him on the brief), for petitioner-appellee.

Bruce W. Sattler, Denver, CO (Anthony A. King of Faegre & Benson, with him on the brief), for respondent-appellant.

Before McKAY, Chief Judge, KELLY, Circuit Judge, and McWILLIAMS, Senior Circuit Judge.

1. "Within promotion," a term apparently coined by the EEOC, refers to Diners Club's practice of promoting a candidate selected by a manager rather than posting the position.

On April 2, 1991, Diners Club petitioned the Denver District Office of the EEOC to either revoke or modify the subpoena. The EEOC refused to either modify or revoke, whereupon Diners Club notified the EEOC that it would not comply with the subpoena.

On August 5, 1991, pursuant to 42 U.S.C. §§ 2000e–5(f) and 2000e–9, the EEOC petitioned the United States District Court for the District of Colorado for an order to enforce the subpoena. On September 6, 1991, the district court ordered Diners Club to show cause why it had not produced the information requested in the subpoena. Diners Club filed with the district court a brief in opposition to the order to show cause, advising the district court that Ms. Brown and Diners Club had reached a settlement and that Ms. Brown had requested that the charge be withdrawn. However, the settlement was apparently contingent on the EEOC's withdrawal of the charge. The EEOC had refused to consent to the withdrawal of the charge until it received the subpoenaed information so that it could then determine whether withdrawal of the charge would defeat the purposes of Title VII.[2]

On October 4, 1991, a hearing was held on the order to show cause. As we understand it, no witnesses were called, although Diners Club offered the affidavit of one of its employees, Patricia Giordano. That affidavit, which was received into evidence, is attached hereto as Attachment B. Otherwise, the hearing consisted of argument by opposing counsel and colloquy between the court and counsel.

On November 5, 1991, the district court ordered Diners Club to comply with the subpoena, except in one important particular. The district court held that the requests for information concerning the promotion policies of Diners Club "nationwide" were "overbroad" and limited the request for information concerning promotion policies to the Diners Club office in Englewood, Colorado. In ordering compli-

ance, the district court rejected Diners Club's suggestion that the subpoena was moot because Diners Club had settled with Ms. Brown and Ms. Brown had requested withdrawal of the charge. The district court also rejected Diners Club's suggestion that in requiring Diners Club to develop and compile information not then in existence, the subpoena was burdensome and overbroad. Finally, the district court rejected Diners Club's contention that the EEOC had no authority to require Diners Club to compile information.

■ Pursuant to 28 U.S.C. § 1291, Diners Club seeks our review of the district court's order of November 5, 1991. An order of a district court directing the production of records described in an administrative subpoena is a final judgment. *EEOC v. University of New Mexico*, 504 F.2d 1296, 1300 (10th Cir.1974).

On appeal, Diners Club raises three matters: (1) under its statutory powers EEOC cannot require Diners Club to interview its employees and review its files to prepare summaries that do not presently exist; (2) since Ms. Brown only alleged discrimination based on her race and sex, the EEOC cannot request documents and information relating to possible discrimination based on national origin; and (3) the EEOC's subpoena requests were unduly burdensome. We shall consider these matters separately.

■ Diners Club's initial argument is that although EEOC may request the production of relevant documents then in existence for examination and copying, it cannot compel the Diners Club to develop and compile summaries by examining personnel files or by interviewing employees. In thus arguing, Diners Club asserts that such is the inescapable teaching of *Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178 (10th Cir.1973). That is not our reading of that case. While it is true that the district court in *Joslin* held that the EEOC could not compel an employer to "compile" infor-

---

**2.** 29 C.F.R. § 1601.10 provides that a charge filed by or on behalf of a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission. Further, the Commission may consent to a request to withdraw a charge where the withdrawal will not defeat the purposes of Title VII.

mation for use by the EEOC, *Joslin Dry Goods Co. v. EEOC*, 336 F.Supp. 941, 947 (D.Colo.1971), we did not so hold on appeal. Apparently the EEOC did not raise this particular matter in this court, and, in any event, we did not address it.

We deem *Circle K Corp. v. EEOC*, 501 F.2d 1052 (10th Cir.1974) to be instructive. In that case, the subpoena issued the employer by the EEOC sought the following:

> a list of all applicants and present employees subjected to the polygraph examination, their racial-ethnic identity and whether they were accepted or rejected; documentation of the nature, standardization and validity of the polygraph test and a list of questions asked of each applicant; qualifications of the examiners who administered the tests; testimony under oath of all knowledgeable employees and officers; and all related matters.

501 F.2d at 1054.

Although the word "compile" was never used in our opinion in *Circle K*, certainly the subpoena required the employer to develop and compile information for EEOC's use. In *Circle K* the district court had refused to enforce the subpoena, relying, in part, on the fact that compliance would entail compilation. *Circle K Corp. v. EEOC*, 7 Fair Empl.Prac.Cas. (BNA) 1058, 1059, 1972 WL 294 (D.N.M.1972). On appeal, we reversed the district court and ordered enforcement. In so doing, we cited with approval *Local No. 104, Sheet Metal Workers v. EEOC*, 439 F.2d 237 (9th Cir. 1971). In *Local No. 104*, the Ninth Circuit stated: "Local 104 contends there is something unique about an order to compile lists. Local 104 is mistaken." 439 F.2d at 243.

**3.** We note that the subpoena speaks in terms of producing copies of documents, copies of position descriptions, copies of postings, copies of advertisement or placement notice, and the like. The subpoena itself does not speak in terms of interviewing employees, past or present. In the district court, Citicorp apparently argued that many of the requested documents did not presently exist and would have to be "compiled," and that such would involve interviewing current employees, and possibly past employees.

Other circuit courts have also held that the EEOC may compel an employer to compile information within its control in order to respond to a subpoena, and that the subpoena power of the EEOC is not limited to the production of documents already in existence. *See EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 fn. 9 (7th Cir.1987); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 478 (4th Cir.1986); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981). In *Bay Shipbuilding*, the Seventh Circuit responded to the employer's argument that the EEOC has no authority to require an employer to compile information simply by stating that "[t]his hoary point has already been correctly rejected in other EEOC cases." [3]

■ Diners Club's next argument is that since Ms. Brown's charge involved discrimination based on race and sex, EEOC's request for information on Diners Club's promotion policies as such relate to national origin is irrelevant. That is too narrow a reading of EEOC's investigative authority. The EEOC seeks to "vindicate the public interest, which is broader than the interest of the charging parties." *EEOC v. Kimberly–Clark Corp.*, 511 F.2d 1352, 1361 (6th Cir.), *cert. denied*, 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975).

In *Circle K, supra*, the employer's policy was to give all prospective employees a polygraph test prior to any employment. However, the charging party in *Circle K* was *not* given a polygraph test. In *Circle K*, we held that the fact that the charging party was not given a polygraph test did not preclude the EEOC from requiring the employer to produce records and information pertaining to its use of the polygraph. 501 F.2d at 1054.

In connection with that argument, the district court stated that the fact "that some of the information sought *exists in the minds of Citicorp employees* does not absolve Citicorp from compiling the information" (emphasis added). We agree. However, we find nothing in the district court's order to indicate that in compiling the requested information Citicorp could also be required to track down and interview former employees.

Similarly, in *Joslin, supra,* the district court held that because the charging employee had been discharged, the EEOC was not entitled to documents and information relating to Joslin's hiring policies. On appeal, we reversed the district court and held that "[t]he factual statement of a wrongful discharge is enough to justify an investigation of employment practices and policies, as to hiring as well as to firing." 483 F.2d at 184.

■ Diners Club's final argument is that it would be unduly burdensome for it to comply with the EEOC's subpoena. We do not think Diners Club has demonstrated that compliance would be unduly burdensome. At best, it has perhaps shown that compliance would be inconvenient and involve some expense. Ms. Giordano in her affidavit did indicate that much of the information the EEOC seeks does not presently exist in documentary form and must be reconstructed by reviewing personnel files or by interviewing past or present employees. Ms. Giordano further stated in her affidavit that for Diners Club to respond to the subpoena "would require two full-time employees working approximately six months." We also learn from the affidavit that "during the time period in question, the Englewood facility [of Diners Club] employed on average 1,100 people."

■ The only evidence offered to show that compliance would be unduly burdensome is the affidavit of Ms. Giordano, and such, in our view, is insufficient to prove that production of the requested information would be unduly burdensome. A court will not excuse compliance with a subpoena for relevant information simply upon the cry of "unduly burdensome." Rather, the employer must show that compliance would unduly disrupt and seriously hinder normal operations of the business. *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir.1986). In this connection, Diners Club has not offered any specific estimate of cost involved nor shown how compliance would impact the normal operations of Diners Club.

■ One facet of Diners Club's "unduly burdensome" argument is that since Diners Club and Ms. Brown have settled her dispute, further investigation is unnecessary. However, although Ms. Brown and Diners Club may have settled her particular charge, the EEOC has not approved the settlement. The EEOC requires all of the requested information in order to make an informed decision whether to allow Ms. Brown's charges to be withdrawn. In any event, a charging party's settlement with his employer does not necessarily end the EEOC's investigatory and enforcement powers. *EEOC v. Children's Hospital Medical Center,* 719 F.2d 1426 (9th Cir. 1983).

Judgment affirmed.

PAUL J. KELLY, Jr., Circuit Judge, concurring in part and dissenting in part.

I concur in this court's decision that the EEOC may extend its investigation to respondent's promotion policy as it relates to possible discrimination based on national origin. Ct. Op. at 1039–40. I also agree that respondent failed to make the showing required to prove that a request is unduly burdensome. *Id.* at 1040. However, footnote 3, Ct. Op. at 1039, notwithstanding, I cannot agree with the court's conclusion that the EEOC, via a subpoena to produce documents, may require the development or creation of new information by the respondent. *Id.* at 1039.

The court relies on *Circle K Corp. v. EEOC,* 501 F.2d 1052 (10th Cir.1974), which indeed addresses the "unduly burdensome" aspect of Citicorp's argument and perhaps the "scope of investigation" point as well. However, that case does not empower the EEOC to require a defendant to create a position paper or conduct extensive investigation regarding consideration for promotion which must then be reduced to document form and produced. We recognized the limited issues presented in *Circle K* in *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 344 (10th Cir.1975) (the objections involved in *Circle K* related only to the relevancy of the requested information and whether the request was unduly burdensome). I agree with the Second Circuit

that *Circle K* does no more than "require[ ] defendants to compile information from data already in existence and under the control of the defendants," *Parents' Committee v. Community School Bd.*, 524 F.2d 1138, 1141 & n. 7 (2d Cir.1975), a very different request than is made here.

There is an important difference between compiling statistical information, *see Rich v. Martin Marietta Corp.*, 522 F.2d at 345 (defendant could be required to produce "plant-wide statistics and department statistics" which the court noted "[i]n all likelihood the defendant already has ... isolated and computed"), and creating information, which is the type of discovery sought here. Some of the EEOC's requests will require that verbal interviews be conducted, reduced to an entirely new document, and then produced. This "manufacturing of evidence" is hardly the function of a subpoena. *Parents' Committee*, 524 F.2d at 1141. While the information the EEOC wishes to gain may be discoverable through other means (i.e. depositions, interrogatories), I do not believe the EEOC may pursue the information by way of a subpoena to produce documents. In effect, Citicorp is charged with conducting an investigation for the EEOC in order to comply with the subpoena.

Section 2000e–9 of title 42 directs us to 29 U.S.C. § 161 to determine the EEOC's powers of investigation. Section 161 in turn delineates the investigatory tools of the agency:

> The [Commission] ... shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated.... The [Commission] ... shall upon application of any party to such proceedings, forthwith issue to such party subpenas [sic] requiring the attendance and testimony of witnesses *or* the production of any evidence in such proceeding or investigation requested in such application.

29 U.S.C. § 161(1). *See* 29 C.F.R. § 1601.16 (enumerating three separate subpoena powers). Section 161 makes a clear distinction between the power to compel the production of documents and the power to subpoena a witness to take testimony. I agree with the Fourth Circuit's analysis of the language granting the former power: "The terms 'copy' and 'examination' imply that the EEOC's right of access then extended only to existing documents." *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 478 (4th Cir.) *cert. denied*, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986). While the Fourth Circuit noted that some changes have been made to § 161(1), the words of limitation discussed were not altered and continue to have the same implication. The power of the Commission, under the first sentence of § 161, is still to have access to any evidence *for the purpose of examining* or to *copy*. The information sought in the subpoena before us would be accessible under the powers described in the latter provision of § 161, which grants the EEOC the authority to require the attendance and testimony of witnesses.

The court relies on *Maryland Cup*, Ct. Op. at 1039, but aside from statutory analysis, the facts of the *Maryland Cup* case do not support enforcement of the broad request in this case. In *Maryland Cup* the employer objected to the EEOC's requiring it to "gather information about the race of former employees." 785 F.2d at 478. In this case, the EEOC is requesting "previously nonexistent written position statements and explanations of the [promotion] systems used." *EEOC v. Gladieux Refinery, Inc.*, 631 F.Supp. 927, 935 n. 2 (N.D.Ind.1986) (scope of the subpoena power would not extend to require the respondent to produce "numerous documents and explanations that currently are not in existence"). As the court noted in *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981), "[i]f respondent lacks the information necessary to respond ..., of course it would be excused pro tanto."

For these reasons, I believe that at least some of the requests contained in the subpoena are beyond the scope the EEOC's power and enforcement should be denied. Accordingly, I respectfully dissent from

that part of the court's opinion which requires interviews of employees and the reduction of those interviews to statements which must then be produced.

ATTACHMENT A

EXHIBIT 1

# UNITED STATES OF AMERICA

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### SUBPOENA

TO:
Citicorp Diners Club
183 Inverness Drive West
Englewood, CO 80111

NO. 91-6
AMENDED

IN THE MATTER OF:

Deborah H. Brown v. Citicorp Diners Club    Charge No. 320881778

*Having failed to comply with previous request(s) made by or on behalf of the undersigned Commission official, YOU ARE HEREBY REQUIRED AND DIRECTED TO:*

☐ *Testify before*    •☒ *Produce and bring*    or •☐ *Mail*    *the documents described below to:*

☐ *Produce access to the evidence described below for the purpose of examination or copying to:*

Ronald Houser, Senior Investigator    *of the Equal Employment Opportunity Commission*
EEOC-1845 Sherman St., 2nd Flr.    *on* 19 April 1991    *at* 5:00 p.m. *o'clock*
Denver, CO 80203
*The evidence required is*

1. Copies of documents which identify all of Respondent's establishments as of September 1988, nationwide, by name, address, and telephone number.

2. Copies of documents which identify all of Respondent's establishments as of September 1988, nationwide, by name, address, and telephone number, which employ the "within promotion" policy.

3. Copies of position descriptions for each position awarded as a "within promotion" during the years 1983 through 1988 at the Englewood, Colorado facility.

4. For each of the positions awarded as a "within promotion" in the Englewood, Colorado facility, submit documents which identify each individual involved in the process, i.e., each individual who recommended an employee for the promotion, the name of the selecting official, and the name of the employee awarded the position.

5. Copies of the personnel file, including information on race, national origin and sex, for each selectee for a "within promotion" at the Englewood, Colorado facility, during the period 1983 through 1988.

Page 1 of 2 pages

*This subpoena is issued pursuant to* ☐ *(Title VII 42 U.S.C. 2000e-9)* ☐ *(ADEA 29 U.S.C. 626(a))* ☐ *(EPA 29 U.S.C. 209.*

*ISSUING OFFICIAL (Typed name, title and address)*    ON BEHALF OF THE COMMISSION
Francisco J. Flores, Jr., District Director
EEOC-1845 Sherman St., 2nd Flr.
Denver, CO 80203

*•NOTICE TO PERSON SUBPOENAED—The Commission will not pay witness*

Page 2 of 2
Attachment to Subpoena No. _91-6___ dated_26 March 1991
in Charge No. 320881778    Amended

6.  Copies of documents which contain the names of each employee by race, national origin, sex and work group, department, or job series (hereinafter the "work group") at the Englewood, Colorado facility, during the period 1983 through 1988.

7.  Documents which identify by race, national origin and sex, each individual in the Englewood, Colorado facility in a position to recommend a "within promotion" during the period 1983 through 1988.

8.  Documents which identify the number of black, Hispanic and/or female employees recommended for a "within promotion" at the Englewood, Colorado facility, during the period 1983 to 1988.

9.  Documents which identify by race, national origin, sex and "work group" each individual who received a "within promotion" during the period 1983 to 1988 at the Englewood, Colorado facility.

10. For each "within promotion" during the period 1983 through 1988 in the Englewood, Colorado facility, submit documents which identify all other individuals in the "work group" for each individual who received a "within promotion".

11. A copy of the posting for each promotional position which was posted during the period 1983 through 1988 in the Englewood, Colorado facility.

12. A copy of the position requisition for each promotional vacancy which occurred during the period 1983 through 1988 in the Englewood, Colorado facility.

13. A copy of the advertisement or placement notice which was published or posted for each promotion position where the Respondent sought external candidates or candidates from outside of the company for the period 1983 to 1988 in the Englewood, Colorado facility.

14. For each promotion filled using internal or "within promotion" policy in the Englewood, Colorado facility during the period 1983 through 1988, provide a statement detailing the reason(s) for utilizing the internal or "within" promotion policy.

On Behalf of the Commission:

_March 26, 1991_
Date

FRANCISCO J. FLORES, JR.
District Director

D-2

ATTACHMENT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 91–S–1341

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Petitioner,

v.

CITICORP DINERS CLUB, INC.,

Respondent.

---

AFFIDAVIT OF PATRICIA GIORDANO

---

State of Colorado )
                  ) ss.
County of Arapahoe )

Patricia Giordano, being of lawful age and duly sworn, states as follows:

1. I am employed in Diners Club's Englewood, Colorado facility as the Human Resources Director. This Affidavit is based upon information and belief and the business records of Diners Club.

2. Diners Club has currently 17 facilities in the United States. No one in the Englewood facility has any authority to promote any employee in any other Diners Club facility who is outside their direct supervisory responsibility.

3. At all times pertinent to Ms. Brown's charge, Diners Club has operated under a job opportunity policy which provides, in pertinent part, "The job opportunity policy permits staff to apply for positions which fit their skills and experience. All positions up to level U will be posted unless the senior manager of the functional area and the senior manager of Human Resources determine that staff who have the skills required for the position are not available within the company, the employment of a qualified external candidate is appropriate, or the position can be filled most appropriately by a candidate already identified within the business." (Emphasis supplied.)

4. During the EEOC's investigation of Ms. Brown's charge, information was requested concerning all persons who had been promoted to level T during 1987, 1988 and 1989. On April 13, 1990, Diners Club provided the requested information and listed eight persons who had received such promotions during the three-year period. Diners Club advised the EEOC that each of these persons were selected by a single manager—John Calia.

5. The Commission has sought information concerning "within promotion." The Commission has defined this term, which is not one used by Diners Club, as "... those individuals promoted under your policy taken from 'managers guide on personnel policies', page 1 of 3, dated April 1986." This policy is quoted in paragraph 3 of this Affidavit.

6. On September 19, 1990, Diners Club advised the EEOC "we are unable, however, to state with specificity whether any of these individuals [discussed in that submission] were promoted under the 'within' policy as you have defined it. It is not our practice to identify promotions as being within department or otherwise and, accordingly, we do not have records which accurately contain this information. Moreover, we are unable to determine whether the promotion to this position was a result of new appointment, a grade change or promotion from one grade level to another. If you wish to review the personnel files of these individuals, please let me know and appropriate arrangements will be made."

7. The Commission conducted witness interviews of several people directly involved in the decisions challenged by the charging party. Diners Club cooperated fully in those interviews.

8. As Diners Club advised EEOC District Director Francisco J. Flores, Jr. on June 6, 1991, "The subpoena requests information regarding "within promotions" including the names, race, sex and national origin of: (i) those who recommended others for promotions; (ii) those who were recommended for promotions and (iii) the participants in the selection process, for transactions which occurred in 1983 through 1988. This information including work group identification is not retrievable in any existing and/or accessible format, and would have to be reconstructed either by reviewing individual personnel files of all those employed during this period (not just managers) and culling the information

from over 2000 files archived at the Englewood office or by delving into the memories of individuals who actually worked in each work group over the time period if such individuals are still employed. By way of further complication, during the time period in question, the Englewood facility employed on average 1,100 people. This workforce is extremely dynamic: approximately 170 employees turned over each year totalling 847 staff changes from 1984 to 1988, not including promotions and transfers); and, only about 18.5% of the managers who were in place in 1983 are still with the company. The Diners Club business has been functionally reorganized approximately eight times since 1983, resulting in major changes in reporting structures, departmental composition and even location. Therefore, even those managers who are still employed will be unable to provide the breadth of information you have requested, and their memories for events occurring eight years ago will result in speculation at best."

9. Diners Club believes that the examination of over two thousand files and the effort to compile what would admittedly be an incomplete response to the items requested in the subpoena would require two full-time employees working approximately six months each. Even after that expenditure of effort, the responses would be incomplete since records which would enable a complete and accurate response do not exist.

10. Prior to Diners Club having any knowledge of the filing of the EEOC's Petition for an Order Enforcing Administrative Subpoena, Diners Club and Ms. Brown had reached agreement in principle concerning the settlement of her charge.

11. Ms. Brown was employed at an officer level. Her position was a grade level R with a 1988 salary range of $22,700 to $41,900.

DATED this 27th day of September, 1991.

(s) Patricia Giordano

SUBSCRIBED AND SWORN TO before me, a notary public in and for said county and state, this 30th day of September,

[Signature]
Notary Public
My Commission expires
January 8, 1994