Barbara THORNTON, Sharon Wright, Leroy Jackson and the class they seek to represent, Plaintiffs,

v.

MERCANTILE STORES COMPANY, INC., d/b/a Gayfer's/J.B. White and Gayfer's/Mercantile South, Gayfer's Montgomery Fair Co., Defendants.

Civ.A. No. 96–D–1484–N.

United States District Court, M.D. Alabama, Northern Division.

July 31, 1998.

Robert F. Childs, Jr., Ann K. Wiggins, Ann C. Robertson, Maury Steven Weiner, Laura M. Hitt, Birmingham, AL, for plaintiff.

E. Barry Johnson, Charles A. Stewart, Montgomery, AL, Fern Singer, E. Barry Johnson, Robert M. Lichenstein, Jr., Birmingham, AL, for defendant.

## ORDER

DE MENT, District Judge.

Before the court are "Defendants' Objections To Magistrate Judge Carroll's Order Granting Plaintiff's [sic] Motion To Compel," ("Defs.' Obj."), filed July 21, 1998. Plaintiffs filed a Response, ("Pls.' Resp."), on July 28, 1998, to which Defendants filed a Reply, ("Defs.' Reply"), on July 29, 1998. After careful consideration of the arguments of counsel, relevant law, and the record as a whole, the court finds that Defendants' Objections are due to be overruled.

## I. Background

Gayfer's is a wholly owned subsidiary of Mercantile. Mercantile operates over 100 retail stores in 17 states. The stores are divided into operating groups. Each group has officers who oversee the stores in that particular group. Each store in each group has managers that oversee the operations of that particular store. The Plaintiffs are employees at two Gayfer's stores in Montgomery, Alabama that are part of Mercantile's Gayfer's/J.B. White Operating Group,[1] which consists of approximately 19 stores in Alabama, Georgia and South Carolina. Plaintiffs' Second Amended Complaint alleges individual disparate treatment, systemic disparate treatment via a pattern or practice of discrimination, and disparate impact. Specifically, the Plaintiffs allege that they were subjected to racial discrimination in pay and in decisions regarding promotions. Their claims are brought on behalf of a class.

One of the key questions in this action is the appropriate "employment group" within the Defendants' corporate structure which should be analyzed in evaluating Plaintiffs' claims. Defendants contend that all hiring, firing, transfer, promotion, and certain pay decisions are made at the store level and that policies and practices at the group level, or even from store to store, are irrelevant. Plaintiffs, on the other hand, argue that although hiring, firing, transfer, promotion and certain pay decisions are made at the store level: (1) the vast majority of employment policies for each store are developed at the group level or higher; (2) the hiring practices in both the Gayfer's/J.B. White Operating Group and the Gayfer's stores are totally subjective; (3) the Gayfer's/J.B. White Operating Group is a defined employment group with common policies; and (4) their disparate impact claims challenge the subjective decision making practices common to all stores in the Gayfer's/J.B. White Operating Group.

Plaintiffs originally sought group-wide or company-wide discovery in January of 1997. Defendants objected, and Plaintiffs eventually filed a Motion To Compel in July of 1997. Judge Carroll conferred with the Parties in August and September of 1997 and conducted an evidentiary hearing on September 18, 1997. At the conclusion of the hearing, Judge Carroll directed the Parties to prepare a joint discovery plan.

---

1. This Operating Group is also known as "Mercantile Southeast."

In late March of 1998, the Plaintiffs were provided with documentary information regarding certain positions at the two Gayfer's stores in Montgomery, Alabama, where the Plaintiffs are employed. Because the Plaintiffs had also requested computerized data, they filed a Renewed Motion To Compel in early April of 1998, in which they narrowed their request to computerized data regarding promotions, transfers, job assignments, and compensation for the Gayfer's/J.B. White Operating Group. (*See* July 16, 1998 Order at 9 n. 4.) Judge Carroll held a hearing on the Renewed Motion To Compel in early June of 1998, and issued his order granting the Motion in part and denying it in part. Judge Carroll's Order directed the Defendants to disclose computerized information from all stores in the Gayfer's/J.B. White Operating Group regarding promotions, job assignments, transfers, and compensation for hourly wage employees only.[2] (July 16, 1998 Order at 9.)

As noted, the Defendants have already disclosed portions of such information from the two Montgomery, Alabama, stores where the Plaintiffs are employed. (*Id.* at 1.) The Plaintiffs seek the information pertaining to the remaining stores in the Gayfer's/J.B. White Group so that they can prepare a statistical analysis of promotions and pay rates within the group. (*Id.*) Also as noted, Defendants object, arguing that such statistical data is irrelevant because all employment decisions are made at the store level, and not the group level, and that Judge Carroll's Order, consequently, is in contravention of the Eleventh Circuit's decision in *Earley v. Champion International Corp.*, 907 F.2d 1077 (11th Cir.1990).

## II. Standard Of Review

Defendants' Objections are brought pursuant to Federal Rule of Civil Procedure 72(a) which provides for district court review of orders entered by a magistrate judge on matters "not dispositive of a claim or defense" that are referred to the magistrate judge for resolution. (*See* Defs.' Obj. at 1; Fed.R.Civ.P. 72(a).) Rule 72(a) states that a party may file objections to the magistrate judge's disposition of the matter with the district judge to whom the case is assigned, who "shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). This standard has been described as "a very difficult one to meet." *See Tai–Pan, Inc. v. Keith Marine, Inc.*, 1997 WL 714898 *11 (M.D.Fla.1997).

## III. Analysis

■ As a threshold matter, the court notes that "[t]rial courts enjoy a broad measure of discretion in managing pretrial affairs, including the conduct of discovery. Decisions regarding the scope of discovery . . . are ordinarily left to the informed judgment of the district judge." *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 186 (1st Cir.1989) (*citing inter alia Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1505 (11th Cir.1985) ("trial court has wide discretion in determining the scope and effect of discovery"), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986)). And, in this case, the decision regarding the scope of discovery was made by the Magistrate Judge; a decision that this court is reviewing under a clear error standard. Finally, courts often apply more liberal discovery rules in Title VII cases than in typical civil cases. *See Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir. 1983).

■ Because this court is reviewing Judge Carroll's July 16, 1998 Order for clear error, the only issue addressed in this Order is whether Judge Carroll's Order directs the Defendants to disclose legally relevant material. The starting point of analysis is the Eleventh Circuit's decision in *Earley*, 907 F.2d at 1077.

There, the plaintiffs were terminated in a merger-necessitated reduction in force and sued, alleging discriminatory discharge in violation of the Age Discrimination In Employment Act, as amended, 29 U.S.C. §§ 621, et

---

**2.** Judge Carroll excluded such data for salaried employees. (*See* July 16, 1998 Order at 8–9.)

**440**

seq. *Earley,* 907 F.2d at 1079–80. After stating the facts and relevant law governing employment discrimination cases, the court noted that a plaintiff may establish a prima facie case of discrimination in three ways: "by presenting direct evidence of discriminatory intent; by meeting the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) [i.e. through circumstantial evidence]; or by demonstrating through statistics a pattern of discrimination." *Earley,* 907 F.2d at 1081. The court then noted that in regards to the case before it, "[i]nsufficient data exist here to prove a pattern of discrimination; so, we address no further the statistical proof issue." *Id.*

After discussing the merits of plaintiffs' prima facie case and affirming the district court's grant of summary judgment for the defendant, the court turned to a discovery issue that had arisen in the district court:

> Plaintiffs claim they were hampered in their presentation of evidence by a pretrial discovery ruling. The district court denied plaintiffs' motion to compel nationwide discovery about "the identification of each person responsible for [Champion's] operation, the identification and function of each department, and the number and type of employees in each department and in the Company as a whole, by age for each year since January 1, 1980." The district court apparently found this request to be unduly burdensome on defendant.[3]
>
> "[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit." *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir.1978) (denial of division-wide discovery request which encompassed some 7,500 employees in thirty-two districts and three manufacturing plants); *accord EEOC v. Packard Elec. Div., General Motors Corp.,* 569 F.2d 315, 318–19 (5th Cir.1978). While Champi-

on's RIF was initiated at the national level, each plant was given considerable autonomy in drawing up its own RIF master plan. The decision to terminate Earley and Noe in the RIF—as opposed to other employees—was made at the local level. Where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit. *See, e.g., Mack v. Great Atlantic and Pacific Tea Co., Inc.,* 871 F.2d 179, 187 (1st Cir.1989).

> Plaintiffs' motion in the district court to compel discovery was conclusory in its statement of reasons for much broader discovery; and the district court was—we think understandably—unpersuaded. A vague possibility that loose and sweeping discovery might turn up something suggesting that the structuring of the RIF was discriminatorily motivated does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry. *Joslin Dry Goods Co. v. EEOC,* 483 F.2d 178, 183–84 (10th Cir.1973). Denial of a motion to compel nationwide discovery will be reversed only if it constitutes an abuse of discretion, *Donovan v. Mosher Steel Co., Div. of Trinity Indus.,* 791 F.2d 1535, 1537 (11th Cir.1986), and we cannot say the district court abused its discretion.

*Earley,* 907 F.2d at 1084–85.

The Plaintiffs argue that "*Earley* does not limit discovery for disparate impact claims because the logic behind the opinion does not apply to disparate impact claims. *Earley* merely holds that, ordinarily, discovery should be focused on 'the *source of the complained of discrimination* —the employing unit or work unit.'" (Pls.' Resp. at 7 (quoting *Earley,* 907 F.2d at 1084) (emphasis in original).) Defendants argue, on the other hand, that although *Earley* did not involve a disparate impact claim, "its holding is not limited to disparate treatment cases for the obvious reason that statistics are often essential to

---

3. Plaintiffs got nationwide discovery on the availability of other positions with Champion at the time of discharge, including documentation regarding its nationwide efforts to find jobs within the company for employees affected by the restructuring. Plaintiffs also were provided full discovery of the Courtland Mill, with more than 1500 employees, and access to the complete personnel files of current and former exempt employees of the Materials Department. [Footnote 6 in original].

prove disparate treatment cases as well as disparate impact cases." (Defs.' Obj. at 4.)

Addressing first the question of *Earley's* scope, the court finds merit in some of Plaintiffs' arguments. First, the *Earley* court expressly noted that there was insufficient data to prove a pattern of discrimination, so they "would address no further the statistical proof issue." *Earley*, 907 F.2d at 1081. Then, after addressing the merits of Plaintiffs' individual disparate treatment claims, the court turned to Plaintiffs' discovery argument and noted that "*[i]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination—the employing unit or work unit." *Id.* at 1084 (citations omitted) (emphasis added). Next, the court noted that where employment decisions were made locally, "discovery *on intent* may be limited to the employing unit." *Id.* (emphasis added). It is clear that by stating, "in the context of investigating an individual complaint," where employment decisions were made locally discovery "on intent" may be limited to the employing unit, and by addressing "no further the statistical proof issue," the Eleventh Circuit was focusing on plaintiffs' discovery request in relation to their individual disparate treatment claims. That is not to say, however, that the principle of focusing on the employing unit, enunciated in *Earley*, is entirely inapplicable to systemic disparate treatment and disparate impact claims.

This court agrees with Judge Carroll's observation that the Eleventh Circuit's decision in *Earley* "turn[ed] in large measure on the fact that the plaintiff's motion to compel was conclusory and sought nationwide discovery," and that "[what] *Earley* contemplates [is] a common sense approach to discovery in employment discrimination cases which allows discovery where there is a particularized need and likely relevance." (July 16, 1998 Order at 5.) Indeed, the Eleventh Circuit noted in *Earley* that the Plaintiffs had received some discovery from outside the employing unit. *Earley*, 907 F.2d at 1084 n. 6. Evidently, the trial court found a particularized need and likely relevance for that discovery. Additionally, the Eleventh Cir-

cuit stated that discovery "may be limited to the employing unit." *Id.* "May" is not "shall." Accordingly, rather than setting a bright-line, as Defendants argue, *Earley* maintains the traditional deference to the trial court in deciding discovery matters. Indeed, the holding of *Earley* was that the trial court did not abuse its discretion in limiting the particular discovery sought. Under *Earley*, as before, the trial court has the discretion to control the scope of discovery, and, upon a showing of particularized need and likely relevance, may allow discovery beyond the employing unit. *Earley*, 907 F.2d at 1084–85. In reality, this standard is akin to the requirements of Federal Rule of Civil Procedure 26, which states that requested discovery should be relevant or reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1).

Here, Plaintiffs' Renewed Motion To Compel was more narrowly tailored than their first Motion To Compel, and, in contrast to *Earley*, was not based on "[a] vague possibility that loose and sweeping discovery might turn up something." *Earley*, 907 F.2d at 1085. And, Judge Carroll's Order only granted the Renewed Motion in part, further limiting the scope of allowable discovery. (July 16, 1998 Order at 9.)

█ Further, Plaintiffs' challenge to the Defendants' subjective decision making processes, via their systemic disparate treatment and disparate impact claims, satisfies *Earley's* requirement of showing a "particularized need and likely relevance" for the requested information. *Earley*, 907 F.2d at 1085. Here, the Plaintiffs allege individual and systemic disparate treatment and disparate impact. Statistical evidence can be relevant to all three types of claims, although it is typically more critical in disparate impact and pattern or practice cases. As Judge Carroll noted, statistical evidence "may be relevant to a showing of pretext even in a case alleging an individual instance of discrimination rather than a 'pattern and practice' of discrimination." *See* July 16, 1998 Order (citing *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir.1983)); *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)

(statistical evidence of a pattern or practice of discrimination is admissible to prove individual claims); *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (statistics may be relevant to establishing a prima facie case); *McDonnell Douglas,* 411 U.S. at 792 (plaintiffs may use statistics to show pretext). And, statistical evidence such as that sought by the Plaintiffs is often necessary to establish both systemic disparate treatment (pattern or practice) and disparate impact claims of discrimination. *See, e.g., Wards Cove,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733; *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986); *Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Teamsters,* 431 U.S. at 324, 97 S.Ct. 1843; *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ Here, the class claims raised by the Plaintiffs are premised upon a challenge to the Defendants' policy of allowing totally subjective decision-making. As Plaintiffs note, "[b]ecause the challenged employment policy—i.e. subjective decisionmaking—applies commonly to all Gayfer's/J.B. White Group stores, computerized data that will allow the plaintiffs' expert an opportunity to analyze the impact of the policy on all of the stores in the Group is needed."[4] (Pls.' Resp. at 8.)

As the Eleventh Circuit has noted, "informal, secretive and subjective hiring or promotion decision processes tend to facilitate the consideration of impermissible criteria, such as race." *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 798 (11th Cir.1988). Where statistical disparities are shown, their "significance is magnified when appraised in light of the fact that ... [the employer's decisions are] almost exclusively a subjective determination." *Bolton v. Murray Envelope Corp.,* 493 F.2d 191, 195 (5th Cir.1974);[5] *see also Cook v. Billington,* 59 F.E.P. 1010, 1012–13 (D.D.C.1992). Accordingly, the information sought could potentially be highly probative of Plaintiffs' systemic disparate treatment and disparate impact claims and useful in supporting their pretext arguments in relation to their individual disparate treatment claims. Therefore, Plaintiffs' discovery request "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Although it is clear that statistical evidence may be utilized in cases alleging both intentional discrimination and disparate impact, Defendants' argument that the proper inquiry should focus on "whether the defendant's personnel decisions are governed by a single, company-wide policy or whether such decisions are made at the local level," has some merit. (*See* Defs.' Obj. at 5.) All the Parties agree that hiring, firing, promotion, transfer and certain pay decisions are made at the store level and not the group level. (*See, e.g.,* Defs.' Obj. at 2; Pls.' Resp. To Mercantile's Mot. For Summ.J. at 21–22.) Under Defendants' analysis, even if the employment statistics from the Gayfer's/J.B. White Operating Group show a gross disparity, all decisions are made at the individual store level, and practices at the group level or even at other stores in the same group may not be relevant to the claims raised in this action. (*See* Defs.' Reply at 8.)

Where these statistics may be relevant, however, is if explicit or implicit policies and practices at the Mercantile group level effect polices, practices and decision-making proto-

---

4. It is not clear to the court that a showing of "particularized need and likely relevance" is even necessary for Plaintiffs' systemic disparate treatment and disparate impact claims, as the statistical evidence requested is part of "the natural focus of the inquiry"—the employment policy challenged by the Plaintiffs is Defendants' subjective decision making process. Accordingly, if Plaintiffs' argument is that Mercantile allows its Gayfer's/J.B. White Operating Group to delegate decision making authority to the stores in the group, and that the group allows the stores to utilize entirely subjective criteria, then the "employing unit" is the Gayfer's/J.B. White Group, and not the stores. *See Earley,* 907 F.2d at 1085.

5. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

cols at the store level. Indeed, the Plaintiffs argue that:

> In a disparate treatment case, which requires a showing of discriminatory intent on the part of the decisionmaker, the "source of the discrimination" is the individual allegedly making discriminatory decisions. In contrast, the "source of discrimination." is disparate impact claims is the challenged employment policy or practice, not the decisionmaker. Thus, in impact claims, where it is alleged that the source of the discrimination is an employment policy or practice that applies commonly to all stores or employing units, the logic for limiting discovery to one store or employing unit completely disappears.
>
> . . .
>
> In this case, the plaintiffs have alleged that the defendants have a policy and practice of subjective decisionmaking that applies to all of the stores in the Gayfer's/J.B. White Group. The Supreme Court has held that "subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases. " *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 991, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). Judge Carroll specifically found, based on the evidentiary hearing and evidence presented in connection with Mercantile's Motion for Summary Judgment, that the stores in the Gayfer's/J.B. White Group have a *common* policy of employing entirely subjective decisionmaking processes for hiring and promotion decisions. (July 16, 1998 Order, p. 3).
>
> . . .
>
> . . . [T]he challenged employment policy— i.e. subjective decisionmaking—applies commonly to all Gayfer's/J.B. White Group stores. . . .

(Pls.' Resp. at 7.)

In the instant action, three facts are readily apparent: (1) except for certain uniform policies regarding pay and transfers, the Defendants' processes for making employment decisions such as those challenged here are almost entirely subjective (there is no evidence of standardized, objective criteria); (2) Mercantile exercises substantial control over most, if not all of Gayfer's labor and employment policies *other than* hiring, firing, transfer, promotion and certain pay decisions; and (3) Mercantile provides substantial training and maintains substantial interaction with Gayfer's officers, including those that make Gayfer's employment decisions. (*See, e.g.* July 16, 1998 Order at 3; Pls.' Resp. To Mercantile's Mot. For Summ.J.; Mercantile's Mem.Br. In Supp. Of Its Mot. For Summ.J. at 5–8.) On the facts of this case, as Judge Carroll noted, discovery beyond the work unit may be appropriate because "[o]ne way of reaching conclusions about an employer's motives is by ascertaining whether the employer's explicit or implicit policies encourage or permit discriminatory employment decisions by its supervisory personnel. The employer is responsible for such decisions . . . because its policies control the manner in which its supervisory employees make them." (July 16, 1998 Order at 6–7 (quoting *Diaz v. American Telephone and Telegraph,* 752 F.2d 1356 (9th Cir.1985) and citing *Burns v. Thiokol Chemical Corp. ,* 483 F.2d 300, 305 (5th Cir.1973)).) Here, Mercantile controls the majority of Gayfer's policies and practices regarding its employees, yet allows Gayfer's to exercise subjective criteria in making employment decisions. The decisions made by Gayfer's, however, may be appealed to Mercantile officers, who can overrule the decisions made at the store level. As the Memorandum Opinion And Order issued concurrently with this Order indicates, a question of fact remains as to the extent of Mercantile's control over Gayfer's labor relations and whether Mercantile and Gayfer's should be considered a "single employer" for Title VII purposes.

While the Defendants seek to keep the focus on the question of the proper employment group (i.e. the Gayfer's/J.B. White Operating Group or the two Gayfer's stores where the Plaintiffs work), that issue is part of Plaintiffs' larger challenge to the Defendants' group-wide policy of allowing subjective decision making in their stores. While the Defendants' argument that the proper inquiry should be limited to the two stores where the Plaintiffs are employed may be persuasive at the summary judgment stage,

for purposes of discovery, it is not. The court finds that the evidence sought "relates to the claim . . . of the party seeking discovery." Fed.R.Civ.P. 26, and that, as Judge Carroll concluded, "the decision in *Earley* plainly does not stand for the proposition that discovery beyond the work or employing unit is never authorized." (July 16, 1998 Order at 5–7.) The court cannot say that Judge Carroll committed clear error in directing the disclosure of certain group-wide data.

The court also finds Defendants' "burden" argument to be unpersuasive. The Magistrate's Order significantly narrowed the scope of discovery that the Defendants' must disclose to computerized information relating to promotions, job assignments, transfers, and compensation for hourly wage employees in the Gayfer's/J.B. White Group. (July 16, 1998 Order at 9.) Judge Carroll's Order is narrowly tailored so as to limit the Defendants' monetary and administrative costs, while at the same time relevant to the subject matter involved in the pending action.

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Objections to the Magistrate Judge's July 16, 1998 Order be and the same are hereby OVERRULED. Accordingly, this court's July 23, 1998 STAY of the Magistrate Judge's July 16, 1998 Order be and the same is hereby VACATED. The Defendants are DIRECTED to comply with the terms of the Magistrate Judge's July 16, 1998 Order, except that the Defendants shall provide the information requested on or before August 17, 1998, rather than July 30, 1998 as originally directed.