In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1239

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellee,*

*v.*

KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 1902—**Blanche M. Manning**, *Judge.*

ARGUED SEPTEMBER 23, 2010—DECIDED APRIL 29, 2011

Before CUDAHY, FLAUM, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In October 2005, Konica Minolta Business Solutions ("Konica") fired Elliot Thompson, who had been working there as a salesman for only eight months. Soon after, Thompson, an African-American, filed a charge of discrimination with the Equal Opportunity Employment Commission (the "EEOC" or "Commission"). The charge alleged that Konica subjected him

to different terms and conditions of employment, disciplined him for not meeting a sales quota, and ultimately fired him after he filed a race-discrimination complaint with the firm's human resources department. In June 2008, the EEOC issued a subpoena to Konica seeking information about its hiring practices. Konica refused to comply, arguing that the requested materials were irrelevant to Thompson's charge of race discrimination. On March 29, 2009, the EEOC filed an application with the district court for an order enforcing the subpoena. The district court issued the order, and Konica appealed. We affirm.

**I**

During Thompson's tenure with Konica, the company had four facilities in and around Chicago. In addition to Tinley Park, where Thompson worked, Konica had offices in Rolling Meadows, Downers Grove, and Chicago. The Tinley Park facility is now closed. Thompson's charge, filed with the EEOC on November 1, 2005, stated:

> Since the beginning of my employment, my Branch Manager has subjected me to different terms and conditions of employment. On or about October 5, 2005, I was disciplined for not meeting sales quotas, whereas a non-Black similarly situated co-worker was not disciplined for not meeting his quota. On or about October 21, 2005, I complained to [the] Human Resources Department about race discrimination. On or about October 31, 2005, I was discharged. I believe I have been discriminated against and retaliated

against because of my race, Black, in violation of the
Civil Rights Act of 1964, as amended.

After receiving this charge, the EEOC initiated an
investigation; at first, Konica cooperated with the
agency's requests for information. The Commission
discovered that there were only six blacks employed
at Konica, out of 120 total employees in the identified
facilities, and all six were employed in Tinley Park. Of
the approximately 100 employees at the other locations,
only one was a person of color. The EEOC also learned
that there were two sales teams at the Tinley Park
facility, and those teams were segregated largely along
racial lines. Thompson's team was made up of five
black employees and two white employees. These facts
led the EEOC to suspect that Konica might have
engaged in discriminatory hiring practices. Specifically,
the Commission thought that the company may inten-
tionally have steered black employees to one sales
team, which was located at the Tinley Park facility and
worked in predominantly African-American neighbor-
hoods.

In June 2008, the EEOC issued a subpoena requesting
records relating to the hiring of sales personnel at all
four of Konica's Chicago-area facilities. The subpoena
sought information about people who expressed
an interest in sales work at any of those offices; the ap-
plications Konica reviewed to fill sales positions; com-
munications with applicants about sales positions; evalu-
ations for each applicant considered for a sales position;
the personal information, including race, of each ap-

plicant hired to fill a sales position and information about whether that person was promoted or transferred; and the criteria used to evaluate applicants for sales positions. Konica filed a petition with the EEOC to revoke the subpoena; the Commission denied its request. Konica then notified the EEOC by letter that it was refusing to comply with the subpoena. On March 26, 2009, the EEOC filed an application with the district court for an order enforcing the subpoena.

## II

### A

The district court granted the EEOC's application, largely for the reasons that Magistrate Judge Ashman had set forth in his report and recommendation. While the district court's discussion of the report and recommendation was cursory, and it would have been helpful for all concerned if the court had given a better explanation of its reasons for overruling Konica's objections, its order was adequate for purposes of Federal Rule of Civil Procedure 72(b)(3) and 28 U.S.C. § 636(b)(1). EEOC subpoena enforcement proceedings "'are designed to be summary in nature.'" *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002) (quoting *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987)). A district court must enforce an administrative subpoena "[a]s long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant. . . ." *Tempel Steel Co.*, 814 F.2d at 485. We review aspects of the district court's

enforcement decision that depend on findings of fact deferentially, but, as usual, we consider questions of law *de novo*. *United Air Lines*, 287 F.3d at 649. As both parties conceded at oral argument, this case presents a straight-forward question of law.

B

Title VII of the Civil Rights Act of 1964, as amended, proscribes discriminatory employment practices on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2, 2000e-3. Congress entrusted the EEOC with the primary responsibility for enforcing Title VII. See *EEOC v. Shell Oil Co.*, 466 U.S. 54, 62 (1984) (citing 42 U.S.C. § 2000e-5(a)). Once a person files a charge of discrimination with the Commission, it is required to investigate. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 190 (1990). The EEOC's investigative authority, however, is limited to "evidence 'relevant to the charge under investigation.'" *Shell Oil*, 466 U.S. at 64 (quoting 42 U.S.C. § 2000e-8(a)).

The Supreme Court in *Shell Oil* articulated a generous standard of relevance for purposes of EEOC subpoenas. The agency need only satisfy a burden we described as "not particularly onerous," *United Air Lines*, 287 F.3d at 652, to obtain "virtually any material that might cast light on the allegations against the employer," *Shell Oil*, 466 U.S. at 68-69. The agency must have "a realistic expectation rather than an idle hope" that the information requested will advance its investigation of the charge,

*United Air Lines*, 287 F.3d at 652-53 (internal quotation marks and citations omitted). This standard of relevance is broader than the standard embodied in the Federal Rule of Evidence 401. See *United Air Lines,* 287 F.3d at 652-53 (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984)). The better analogy, however, for this purpose is to the standard found in Federal Rule of Civil Procedure 26, which says that "[r]elevant information [for civil discovery purposes] need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). As the Supreme Court recognized in *Shell Oil,* the role given to the Commission in the statute calls for a relevance standard broad enough to ensure that the "Commission's ability to investigate charges of systemic discrimination not be impaired*."* 466 U.S. at 69.

When the EEOC investigates a charge of race discrimination for purposes of Title VII, it is authorized to consider whether the overall conditions in a workplace support the complaining employee's allegations. Racial discrimination is "by definition class discrimination," and information concerning whether an employer discriminated against other members of the same class for the purposes of hiring or job classification may cast light on whether an individual person suffered discrimination. See *United Air Lines*, 287 F.3d at 653 (citing *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969)). For that reason, the EEOC is authorized to subpoena "evidence concerning employment practices other than those specifically charged by complainants" in the course

of its investigation. *United Air Lines*, 287 F.3d at 653 (internal quotation marks and citations omitted); see also *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 311 n.8 (7th Cir. 1981) ("The courts uniformly uphold the relevancy of EEOC subpoenas seeking information about discrimination not specifically alleged in the charge.").

Konica nonetheless argues that the information about its hiring practices that the EEOC wanted to examine is not relevant to Thompson's charge of discrimination. Its perspective is too narrow. The Commission is entitled generally to investigate employers within its jurisdiction to see if there is a prohibited pattern or practice of discrimination. Here, Thompson alleged both a specific instance and such a pattern of race discrimination. He asserted that he was treated differently from white co-workers in the "terms and conditions" of his employment, and that he was unequally disciplined for not meeting a sales quota. It is true that Thompson was not saying that Konica had refused to hire him, but that does not make hiring data irrelevant. The question under *Shell Oil* and its progeny is not whether Thompson specifically alleged discrimination in hiring, but instead is whether information regarding Konica's hiring practices will "cast light" on Thompson's race discrimination complaint.

We have no trouble concluding that the information the EEOC is seeking meets that standard. The answer to the question whether Konica discriminates in hiring or in assigning employees to its various facilities will advance the agency's investigation into possible discrimi-

nation against Thompson based on his race, as well as any more general case it might choose to bring. Additionally, although it was not required to do so, the EEOC advanced another theory explaining how Konica's hiring information is relevant to Thompson's claim. The Commission says that the hiring data might also cast light on whether Konica discriminated against Thompson when it assigned him to a particular sales territory. This is an issue that falls squarely within Thompson's allegation of discrimination in the "terms and conditions" of employment. Because the appeal now before us raises only the question whether the subpoena is enforceable, we express no opinion on whether Konica's alleged sales territory assignment based on race violates Title VII. But see *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908, 913 (7th Cir. 2010) ("It is now widely accepted that a company's desire to cater to the perceived racial preferences of its customers is not a defense under Title VII for treating employees differently based on race.").

From the perspective of the investigation, it is worth recalling that a "charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit"; its purpose is simply to notify the EEOC of an allegation that an employer has violated Title VII. *Shell Oil*, 466 U.S. at 68. The Commission is required to investigate a person's charge of discrimination and pursue all relevant leads to determine whether the charge warrants a lawsuit. Only if the information collected during the investigation suggests that "there is 'reasonable cause' to believe that the employer has engaged in an

unlawful employment practice, does the matter assume the form of an adversary proceeding." *Id.*

Nothing in this record suggests that the EEOC has strayed so far from either Thompson's charge or its broader mission that it has embarked on the proverbial fishing expedition. The Commission has a "realistic expectation rather than an idle hope" that the hiring materials it seeks will illuminate the facts and circumstances surrounding Thompson's allegations of race discrimination. Contrary to Konica's argument, this case does not present the problem we identified in *United Air Lines*. There, an employee of American origin residing in France alleged that United discriminated against her by failing to contribute into the French social security system on her behalf. Evidence suggested that United did contribute for French employees. In the course of its investigation, the EEOC subpoenaed extensive information on all United employees residing abroad who had taken a medical leave. *Id.* at 654. We found that the information sought went "far beyond" an inquiry about which of United's employees received the benefit of United's making payments into the French social security system. *Id.* In particular, we noted that the EEOC did not limit its information request to employees who may have been considered "similarly situated" to the complainant, either in terms of position or location. *Id.* Here, in contrast, the EEOC limited its inquiry to the four Konica branches in the Chicago area and to sales personnel. We conclude that the information sought by the EEOC in this case is properly tailored to matters within its authority.

C

Finally, we briefly address two additional issues raised by Konica. In its briefs, Konica expends considerable energy arguing that the district court made clearly er-roneous factual findings when it construed Thompson's charge. According to Konica, because Thompson alleged only "discipline and discharge" discrimination, the district court's "finding" that the charge included allegations about the discriminatory assignment of sales territories is clearly erroneous. Konica's focus on factual findings is misguided. The interpretation of an EEOC charge presents a question of law that we review *de novo*, not a question of fact. See *Conner v. Ill. Dep't of Natural Resources,* 413 F.3d 675, 680 (7th Cir. 2005). We need not, however, give further attention to the outer limits of the charge, because our conclusion that the materials subpoenaed by the EEOC are relevant to its investiga-tion of Thompson's charge resolves this appeal. As we have noted, information about Konica's hiring practices will cast light on Thompson's race discrimination com-plaint. Moreover, although Konica does not explicitly put it this way, it may be implying that Thompson's charge of discrimination is inadequate to permit the EEOC to investigate broader practices of discrimination at the Chicago facilities. We have already explained why the EEOC is entitled to obtain access to the infor-mation it has subpoenaed in this case, which should be enough to put Konica's argument to rest. We remind the parties that should the agency later conclude that a broader investigation is warranted, the Commission is entitled to file its own charge, see 42 U.S.C. § 2000e-5(b), in

which it can allege a pattern or practice of discrimination and calibrate its investigation accordingly. See *United Air Lines,* 287 F.3d at 655 n.7. *Shell Oil*'s relevance standard would then need to be applied to any such charge from the Commission.

Though Konica spared no effort in arguing for a narrow construction of Thompson's charge, it failed adequately to develop its argument that compliance with the subpoena would constitute an undue burden. A court can "modify or exclude portions of a subpoena only if the employer 'carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad.'" *United Air Lines*, 287 F.3d at 643 (quoting *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)). There is a presumption in favor of requiring an employer's compliance with a subpoena when the Commission inquires into legitimate matters of public interest. See *Shaffner*, 626 F.2d at 38. Race discrimination continues to be a matter of grave public concern. A conclusory statement that an EEOC request is burdensome is insufficient to overcome the presumption that Konica must comply with the subpoena. *United Air Lines*, 287 F.3d at 643. Here, Konica asserts that the information sought would constitute an undue burden because the company would have to obtain, organize, and produce the materials. Konica's argument merely recognizes that any request for information requires the provider to collect and tender materials. This argument falls far short of what is required to modify or quash a subpoena.

The judgment of the district court is AFFIRMED.