FILED
United States Court of Appeals
Tenth Circuit

February 27, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff - Appellant,

v.

No. 11-1121

BURLINGTON NORTHERN SANTA
FE RAILROAD, n/k/a BNSF Railway
Company,

      Defendant - Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:10-CV-03008-JLK)**

Gail Coleman (P. David Lopez, General Counsel, Lorraine C. Davis, Assistant
General Counsel, and Daniel T. Vail, Esq. of U.S. Equal Employment
Opportunity Commission, Office of General Counsel, with her on the briefs),
Washington, D.C., for Plaintiff - Appellant.

Bryan Neal (and Andrew D. Ringel of Hall & Evans, L.L.C., with him on the
brief), Denver, Colorado, for Defendant - Appellee.

Before **KELLY**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

**KELLY**, Circuit Judge.

      The Equal Employment Opportunity Commission ("EEOC") appeals from

the judgment of the district court declining to enforce an administrative subpoena against Burlington Northern Santa Fe Railroad, now known as Burlington Northern Santa Fe Railway Company ("BNSF"). On appeal, the EEOC argues that the district court abused its discretion because it "applied erroneous legal principles and ignored record evidence." Aplt. Br. 16. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

### Background

Gregory A. Graves and Thomas A. Palizzi filed ADA discrimination charges with the EEOC in February and October 2007, respectively. 1 R. AA15-16, AA24-25. Each man alleged discrimination based on a perceived disability after not being hired by BNSF (as a Conductor or Conductor Trainee) following a conditional offer of employment and a medical screening procedure. Id. The EEOC served BNSF with notice of each charge within three days of receiving the charge, 1 R. AA17, AA26, and BNSF timely returned position statements regarding each charge, 1 R. AA19-23, AA28-32. In general, BNSF's position was that it rescinded the offers based on the medical requirements and safety concerns incident to the Conductor position, that it did not view either applicant as "disabled," and that both applicants were free to apply for other positions within BNSF for which they were qualified. 1 R. AA19-23, AA28-32.

On February 2, 2009, the EEOC issued a letter to BNSF requesting "any

computerized or machine-readable files . . . created or maintained by you . . . during the period December 1, 2006 through the present that contain electronic data about or effecting [sic] current and/or former employees . . . throughout the United States." 1 R. AA33-34. BNSF responded on February 17, indicating that it "utilized a third party web based applicant tracking system" and explaining how both applicants and BNSF used that system. 1 R. AA35-36. Between February 17 and March 27, BNSF and the EEOC apparently communicated by phone, see 1 R. AA37, and BNSF sent the EEOC a letter on March 27 challenging the scope of the EEOC's investigation and requesting documentation in support of a broader investigation, 1 R. AA37-39. Roughly two weeks later, on April 10, the EEOC served its subpoena on BNSF. 1 R. AA40-43. Along with that subpoena, the EEOC sent BNSF a letter explaining that the EEOC had broadened its investigation from the charges filed by Mr. Graves and Mr. Palizzi to include "pattern and practice discrimination," thus warranting the demand for nationwide information. 1 R. AA44. The EEOC did not explain why, or on what basis, it was expanding its investigation. BNSF filed its petition to revoke or modify the subpoena with the EEOC on April 20, 2009, 1 R. AA45-52; the EEOC issued a final determination denying that petition on June 8, 2010, and ordered BNSF to comply with the subpoena as served within twenty days, 1 R. AA60-76.

BNSF did not comply with the administrative subpoena, and the EEOC applied to the district court for enforcement of the subpoena on December 13,

2010. 1 R. AA4-7. With its application to the district court, the EEOC included an affidavit explaining that the EEOC was in possession of four similar complaints against BNSF: one each from Kansas, Minnesota, Texas, and Wyoming.[1] 1 R. AA11-13. The record suggests that the EEOC never provided that information to BNSF before applying to the district court. The district court discharged the EEOC's show cause order and sustained BNSF's refusal to comply with the subpoena on February 2, 2011, stating:

> The administrative subpoena is pervasive, and it seeks plenary discovery. There are no allegations of a pattern and practice. The demand for data on a nation-wide basis with two individual claims involving only applicants in Colorado is excessive. And while wide deference to administrative inquiries and investigations -- wide deference to the scope of the subpoenas is given, it does not transcend the gap between the pattern and practice investigation and the private claims that have been shown here.

1 R. AA145.

Discussion

We review a district court's ruling on an EEOC subpoena for an abuse of discretion. EEOC v. Dillon Cos., 310 F.3d 1271, 1274 (10th Cir. 2002). The statute granting the EEOC authority to investigate charges of discrimination

---

[1] The affidavit states that the EEOC possessed five additional charges supporting five other cases, 1 R. AA11, but proceeded to summarize only four additional charges, 1 R. AA11-13. The EEOC also explained, *for the first time*, that the same Medical Review Officer who rescinded Mr. Graves's and Mr. Palizzi's offers apparently played a role in at least three of these four charges.

states, in relevant part, that the EEOC may access "any evidence of any person being investigated" so long as that evidence "relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The EEOC has the same authority to investigate charges under the ADA as it has under Title VII. EEOC v. Waffle House, Inc., 534 U.S. 279, 285 (2002) (citing 42 U.S.C. § 12117(a) (1994)). While the Supreme Court has described the relevance requirement in § 2000e-8(a) as "not especially constraining," EEOC v. Shell Oil Co., 466 U.S. 54, 68 (1984), the Court also has explained that courts should not construe the relevance requirement so broadly as to "render[] that requirement a nullity," id. at 69. Thus, "when a court is asked to enforce a Commission subpoena, its responsibility is to 'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge . . . .'" Univ. of Penn. v. EEOC, 493 U.S. 182, 191 (1990) (quoting Shell Oil Co., 466 U.S. at 72 n.26).

The district court concluded that the information sought by the EEOC was not relevant to the charges under investigation. The EEOC first argues that the district court ignored record evidence because all six charges, taken together, warrant an investigation into an apparent pattern or practice of discrimination by BNSF. We disagree.

The EEOC is entitled only to evidence that is "relevant to the charge[s] under investigation." The subpoena focuses on the charges filed by Mr. Graves

- 5 -

and Mr. Palizzi. Nowhere in the document is there any reference to any other charge—by way of a reference to any other charging party, an additional charge number, or anything else—that might indicate that an additional charge is at issue. The EEOC did explain, in its cover letter, that: "Part of the Commission's request addresses information that relates to pattern and practice discrimination. The EEOC is providing this notice of its intentions to broaden this investigation under the authority granted by the statute." 1 R. AA44. But this statement does not identify the statute to which it refers, it does not constitute a "charge" of discrimination, and it conveys no basis for expanding the investigation. We conclude that "the charge[s] under investigation" were the charges filed by Mr. Graves and Mr. Palizzi, and it is against those charges that the relevance of any information sought by the EEOC must be measured. The EEOC should not wait until it applies to the district court to supply justification or evidence that should have been provided during the administrative enforcement phase, and the EEOC has not explained how or why the district court was required to credit its summaries of other charges filed against BNSF.[2]

_____

[2] BNSF likely was aware of the other charges, as the EEOC is required by statute to send a notice of any charge filed against an employer within ten days of receiving a charge. 42 U.S.C. § 2000e-5(b). But BNSF had no way of knowing which other charge(s), if any, the EEOC was considering as additional support for the investigation at issue. Furthermore, the EEOC never submitted the other charges to the district court; rather, it provided *summaries* of those charges. 1 R. AA11-13. Even if the other charges had any bearing on the relevance of the information sought by the EEOC, the district court could not have appropriately weighed the significance of those charges without having them in evidence.

We also note that the EEOC attempts to justify an incredibly broad request for information—how BNSF keeps track of every current and former employee, across the country, since 2006—as necessary to create "a carefully-tailored request (e.g., in terms of position or geography) for substantive information about the possible pattern or practice of disability discrimination (i.e., about the actual employment decisions or policies at issue)." Aplt. Reply Br. 14. The EEOC further explains that, "[i]f a pattern or practice of disability discrimination at BNSF exists, the discrimination Graves and Palizzi allegedly suffered would appear to be a part of it." Id. Any act of discrimination *could* be part of a pattern or practice of discrimination, but not every charge of discrimination warrants a pattern or practice investigation. As the Supreme Court explained in Shell Oil Co., we should not construe relevance so broadly as to render its requirement a nullity. 466 U.S. at 69.

The EEOC argues that the district court erroneously required it to demonstrate an allegation of pattern or practice discrimination before it may conduct an investigation into the same. Aplt. Br. 21-22. We disagree. The district court used the phrase "pattern and practice" twice. The district court first acknowledged that no such allegation had been made: "There are no allegations of a pattern and practice." 1 R. AA145. It then concluded that "wide deference to the scope of [EEOC] subpoenas . . . does not transcend the gap between the pattern and practice investigation and the private claims that have been shown

here." Id.  Neither this acknowledgment nor this conclusion misstates the law, and the district court did not abuse its discretion by stating either.

The EEOC next argues that the district court erroneously interpreted the EEOC's subpoena as seeking plenary discovery.  Aplt. Br. 25-26.  In reality, though, the EEOC *did* seek plenary discovery: insofar as the information sought by the EEOC was not "relevant to [a] charge under investigation," 42 U.S.C. § 2000e-8(a), the EEOC had no jurisdiction or power to seek it.  We do not think, as the EEOC argues, that the district court misunderstood the meaning of plenary discovery as it applies to the EEOC.

The EEOC finally cites a variety of cases for the proposition that a single allegation of discrimination may warrant a pattern or practice investigation.  Aplt. Br. 29-38.  We are not convinced.  Of the cases cited by the EEOC, only EEOC v. Kronos Inc. involved a claim of disability discrimination, and that case turned on company-wide use of a test that allegedly facilitated discrimination based on disability.[3]  See 620 F.3d 287, 297 (3d Cir. 2010).  McAlester v. United Air Lines, Inc. had almost nothing to do with the EEOC, 851 F.2d 1249, 1256 (10th Cir. 1988) (the plaintiff had filed a charge of racial discrimination with the EEOC, but the EEOC found no racial discrimination), and the cited section

---

[3]  The EEOC argues that, because it has evidence that a single Medical Officer eliminated candidates for various positions based on perceived disabilities, this case is factually similar to Kronos Inc.  Aplt. Br. 31-34.  We reject this argument because only the charges filed by Mr. Graves and Mr. Palizzi were "the charge[s] under investigation."

- 8 -

pertains to expert statistical analyses, id., which are not at issue here.  The other cases involved allegations of national origin discrimination, Circle K Corp. v. EEOC, 501 F.2d 1052, 1054 (10th Cir. 1974), a pattern or practice of discrimination, Joslin Dry Goods Co. v. EEOC, 483 F.2d 178, 180 (10th Cir. 1973), and/or racial discrimination, id.; EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc., 639 F.3d 366, 367 (7th Cir. 2011).  And while the Seventh Circuit permitted the EEOC to conduct what amounted to a pattern or practice investigation based on an individual allegation of racial discrimination, that decision is distinguishable for at least two reasons: first, the court also explained that racial discrimination "is by definition class discrimination," 639 F.3d at 369 (internal quotation marks omitted), and second, the EEOC sought information pertaining to other offices in the same metropolitan area, id. at 368, rather than information pertaining to operations nationwide.  Perhaps the EEOC would have been entitled to information relating to other positions and offices *in Colorado*; but that is not the case before us.

Nothing prevents the EEOC from investigating the charges filed by Mr. Graves and Mr. Palizzi, and then—if it ascertains some violation warranting a broader investigation—expanding its search.  Alternatively, nothing prevents the EEOC from aggregating the information it possesses in the form of a Commissioner's Charge.  See 42 U.S.C. § 2000e-5(b).  But nationwide recordkeeping data is not "relevant to" charges of individual disability

discrimination filed by two men who applied for the same type of job in the same state, and the district court did not abuse its discretion in reaching that conclusion.

AFFIRMED.