**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff - Appellee,

v.

CENTURA HEALTH,

     Defendant - Appellant.

No. 18-1188

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:16-MC-00055-WJM-MLC)**
_____

Submitted on the briefs:[*]

Melvin B. Sabey, Hall, Render, Killan, Heath & Lyman, P.C., Denver, Colorado, for
Defendant-Appellant.

James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General
Counsel, Sydney A.R. Foster, Assistant General Counsel, and Paul D. Ramshaw,
Attorney, Equal Employment Opportunity Commission, Washington, D.C., for Plaintiff-
Appellee.
_____

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.
_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.

**LUCERO**, Circuit Judge.

_____

Centura Health ("Centura") appeals the district court's orders enforcing in part an administrative subpoena issued to it by the Equal Employment Opportunity Commission ("EEOC"). We affirm exercising jurisdiction under 28 U.S.C. § 1291.[1]

**I**

When investigating charges of discrimination, the EEOC may obtain evidence that "relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). The EEOC is authorized to obtain such evidence by issuing a subpoena and seeking a court order enforcing it. § 2000e-9; McLane Co. v. EEOC, 137 S. Ct. 1159, 1164 & n.1 (2017). The EEOC exercised those powers when it sought information from Centura, a multi-facility healthcare organization operating primarily in Colorado. Between February 2011 and October 2014, eleven current or former Centura employees, working across eight Colorado locations, filed charges of discrimination with the EEOC. They alleged that Centura violated the Americans with Disabilities Act ("ADA") by terminating their employment or refusing to allow them to return to work after medical leave. These employment decisions were allegedly made because of their disabilities or their requests for accommodations.

---

[1] See EEOC v. Citicorp Diners Club, Inc., 985 F.2d 1036, 1038 (10th Cir. 1993) (explaining that, for § 1291 purposes, "[a]n order of a district court directing the production of records described in an administrative subpoena is a final judgment").

After receiving the first charge in February 2011, the EEOC requested information from Centura related to that charge, including the employee's personnel file and a list of all positions Centura had open at the time her employment ended. Centura provided the information. After three more charges had been filed, the EEOC informed Centura that its "investigation may include like and related allegations by other aggrieved individuals involving bases and/or issues not directly affecting the Charging Party, as well as those like and related issues not alleged in the charge." The EEOC asked Centura for information about all employees from January 2009 through the date of the request in February 2012 who had "requested and/or who were placed on non-[Family and Medical Leave Act ("FMLA")]" or FMLA leave, or who had requested an accommodation for their disability. Centura responded that the request was overbroad and unduly burdensome and asked the EEOC to narrow the scope of its request.

A month later, the EEOC sent Centura an identical request identifying multiple charges as the objects of its investigation. Centura provided some of the requested information but argued some requests were irrelevant to the charges at issue and contended the cases involved "unique and isolated circumstances at separate locations" that did not suggest a pattern of discrimination that might justify the EEOC's broad request. As the remainder of the eleven charges were filed, the EEOC sent Centura more requests for information.[2] Centura provided information regarding

---

[2] Those requests are referred to in the notices of the charges the EEOC sent to Centura, but we are unable to locate them in the appendix Centura filed.

each charging party but refused to provide further information, arguing the requests sought information irrelevant to the individual charges and were overly burdensome.

The EEOC issued an administrative subpoena in December 2014. Subpoena items 9 and 18(e) requested identifying information for each employee who worked at the same facilities in Colorado as the eleven charging parties and who, between August 2009 and 2014, requested an accommodation due to a medical condition (item 9) or were identified as disabled (item 18(e)). Item 9 requested information about the identified employees' accommodation requests, the outcome of those requests, and any disciplinary action or separation from employment. Item 18(e) requested for each identified employee the type of medical condition at issue and information about discipline or separation from employment.

Centura petitioned the EEOC to revoke or modify the subpoena. The EEOC denied the petition and directed Centura to provide the requested information. Centura refused, so the EEOC filed a subpoena-enforcement action in the district court. Centura challenged only parts of the subpoena, including items 9 and 18(e), arguing that compliance would be unduly burdensome and that the information sought was not relevant to the eleven individual charges within the meaning of § 2000e-8(a). It alleged the information would only be relevant to a pattern-or-practice investigation, but the EEOC had not filed a pattern-or-practice charge.

The district court issued an order enforcing the subpoena in part. The court ordered Centura to provide information it did not object to and ruled against Centura

4

regarding the relevance of the information requested in items 9 and 18(e). The court determined the disputed information was relevant within the meaning of § 2000e-8(a), "given the number of ADA charges the EEOC has received and the widespread geographic distribution of those charges." The court noted that relevance is "generously construed" and that "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." It referred the undue burden question to a magistrate judge, who concluded producing information related to items 9 and 18(e) would not be unduly burdensome and declined to take up Centura's contention that the information was not relevant.

The district court overruled Centura's objections to the magistrate judge's undue burden decision. The court construed Centura's objections in part as a motion to reconsider the earlier ruling regarding relevance and determined this argument lacked merit.[3] The court therefore ordered Centura to comply with the magistrate judge's order. Centura appealed.

---

[3] Centura pointed out that in an email it received from the EEOC after the district court had ruled on relevance, the EEOC said it wanted to use the disputed information to "determin[e] Centura's usual policies and procedures regarding the provision of reasonable accommodation." Centura argued this statement amounted to a concession that the request was an attempt "to pursue plenary discovery for a pattern and practice investigation, rather than prosecuting the claims of the individually named Charging Parties." The district court rejected this argument because "procedures are as relevant to investigation of an individual charge as they are to a pattern-or-practice charge."

5

## II

Centura now challenges only the district court's relevance determination, not its undue burden ruling. We review a district court's ruling on the enforceability of an EEOC subpoena for abuse of discretion. McLane Co., 137 S. Ct. at 1164. "[W]hether a district court employed the correct standard of relevance—as opposed to how it applied that standard to the facts of a given case—is a question of law," and a district court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law." Id. at 1168 n.3 (quotation and citation omitted). A district court also abuses its discretion if it "relies on clearly erroneous factual findings, or where there is no rational basis in the evidence for its ruling." Trentadue v. FBI, 572 F.3d 794, 806 (10th Cir. 2009) (quotation omitted).

The EEOC has the authority to subpoena evidence that "relates to unlawful employment practices . . . and is relevant to the charge under investigation." § 2000e-8(a). This limitation "is not especially constraining" and "afford[s] the Commission access to virtually any material that might cast light on the allegations against the employer." EEOC v. Shell Oil Co., 466 U.S. 54, 68-69 (1984) (emphasis added). But courts must not "read relevancy so broadly as to render the statutory requirement a nullity." EEOC v. TriCore Reference Labs., 849 F.3d 929, 937 (10th Cir. 2017) (quotation omitted).

In the district court, the EEOC had the burden of establishing that the subpoenaed information is relevant to the charges under investigation. Id. The EEOC had to show: (1) "it has a realistic expectation rather than an idle hope that

6

the information requested will advance its investigation"; and (2) a "link between [its] investigatory power and the charges of discrimination." Id. (quotation omitted).

We conclude the district court did not abuse its discretion in determining the EEOC met its burden. The relevance standard under § 2000e-8(a) "sweeps more broadly than it would at trial." EEOC v. McLane Co., 857 F.3d 813, 815 (9th Cir. 2017). This is because "[a]t the investigative stage, the EEOC is trying to determine only whether 'reasonable cause' exists 'to believe that the charge is true.'" Id. (quoting § 2000e-5(b)). And at the summary judgment stage of litigation, for example, evidence that an employer has a discriminatory policy "is potentially relevant" to an individual charge. Jones v. United Parcel Serv., Inc., 502 F.3d 1176, 1188 (10th Cir. 2007). Because evidence of a discriminatory policy is relevant to individual charges under the narrower relevance standard in a civil case, it follows that such evidence is relevant to individual charges under the broader standard of § 2000e-8(a) because it "might cast light" on the charges under investigation. Shell Oil Co., 466 U.S. at 69; see also EEOC v. Associated Dry Goods Corp., 449 U.S. 590, 604 (1981) ("Statistics and other information about an employer's general practices may certainly be relevant to individual charges of discrimination[.]"); Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355, 358 (6th Cir. 1969) ("[A]n employer's pattern of action [is] relevant to the Commission's determination of whether there is reasonable cause to believe that the employer has practiced racial discrimination" (quotation omitted)).

7

That is not to say there are no limits. Our decisions in EEOC v. Burlington Northern Santa Fe Railroad, 669 F.3d 1154 (10th Cir. 2012) and TriCore Reference Laboratories set some boundaries in cases in which the EEOC seeks pattern-or-practice evidence based only on individual charges. But the limits outlined in those cases do not require us to conclude the district court abused its discretion in this case.

In Burlington Northern, we determined the district court did not abuse its discretion in denying a petition to enforce an administrative subpoena requesting nationwide pattern-or-practice information because it was not relevant to charges of racial discrimination filed by two employees in Colorado. 669 F.3d at 1159. Because the information request referenced only the two individual charges and the EEOC did not refer to any other charging parties or otherwise "indicate that an additional charge [was] at issue," id. at 1157, the EEOC had done nothing to "transcend the gap between the pattern and practice investigation and the private claims," and the "wide deference" courts afford to the scope of EEOC subpoenas could not bridge that gap, id. at 1158 (quotation omitted). We did, however, suggest the subpoena might have been enforceable if it had been confined to Colorado positions and offices. Id. In this case, the EEOC's subpoena was based on eleven charges and requested information pertaining only to the locations in Colorado where the charging parties worked. A subpoena adhering to the geographical scope of individual charges supports a determination that pattern-or-practice evidence is relevant to the investigation of individual charges.

8

In TriCore Reference Laboratories, the EEOC sought judicial enforcement of an administrative subpoena it issued while investigating a single charge of discrimination. 849 F.3d at 929. While "a single discriminatory act does not, by itself, warrant a broader pattern-or-practice investigation," id. at 939, in this case the EEOC based its request for pattern-or-practice information on eleven charges.

Centura argues that in cases in which there is no pattern-or-practice charge, pattern-or-practice evidence is only relevant if there is a specific and substantial connection between the individual claims and the information requested, rather than a general possibility of finding patterns or practices. Centura contends the only common theme tying the requested information to the eleven individual charges is the broad fact that all the charges alleged disability discrimination. Relatedly, Centura distinguishes cases the EEOC relies on where pattern-or-practice evidence was held relevant to individual charges, pointing out that each case related to the investigation of a policy more specific than some generic form of discrimination.[4] Centura's representations of the disparate factual nature of the eleven charges is largely accurate, and we agree with the distinctions it draws regarding the EEOC's cases. But Centura fails to persuade us that eleven charges of disability discrimination, most alleging a failure to accommodate across a handful of an employer's facilities, are

---

[4] Centura also makes much of the fact that the EEOC first sought pattern-or-practice evidence based only on the first charge, and then, when Centura resisted, laid in wait for several years until it had amassed ten more charges to support what Centura views as the proverbial fishing expedition. But Centura has not pointed to any prohibition on the EEOC's course, and our task is to assess the district court's relevance determination based on the eleven charges.

insufficient to warrant finding information regarding an employer's pattern-or-practice relevant.

Centura also faults the district court for relying on the statement in Shell Oil that it is important not to impair the EEOC's ability to investigate systemic discrimination, 466 U.S. at 70, pointing out that in Shell Oil, there was a pattern-or-practice charge, see id. at 88-89. Given the absence of a pattern-or-practice charge against Centura, the district court's reliance on this statement is questionable, but it is not enough to alter our relevance analysis. See Citicorp Diners Club, 985 F.2d at 1039 ("The EEOC seeks to vindicate the public interest, which is broader than the interest of the charging parties." (quotation omitted)); Blue Bell Boots, Inc., 418 F.2d at 358 ("The Commission may, in the public interest, provide relief which goes beyond the limited interests of the charging parties," and therefore "evidence concerning employment practices other than those specifically charged by complainants may properly be considered by the Commission in framing a remedy.").

Finally, Centura argues that holding pattern-or-practice evidence can be relevant to individual charges renders superfluous Congress' 1972 expansion of the EEOC's powers to include investigating pattern-or-practice charges when such charges have been filed. See § 2000e-6(e). We disagree. The grant of authority to the EEOC to investigate patterns or practices of discrimination accompanied the transfer of that authority from the Attorney General. See § 2000e-6(c), (d); Gen. Tel. Co. v. EEOC, 446 U.S. 318, 328 (1980) ("The 1972 amendments [to Title VII of the Civil Rights Act of 1964] . . . transferred to the EEOC the Attorney General's

10

authority to bring pattern-or-practice suits on his own motion.").  There is no evidence that in transferring that authority, Congress meant to limit the type of evidence the EEOC can obtain when investigating individual charges.[5]

**III**

The district court's orders enforcing the administrative subpoena are **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[5] Because we conclude the pattern-or-practice evidence is relevant to the investigation of individual allegations against Centura in this case, we need not address the parties' arguments regarding whether the information might also allow the EEOC to identify comparators.